1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   CARLA ROUNDS,                          No.  1:20-cv-00170-DAD-CKD

12              Plaintiff,

13        v.                                ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANT'S
14   THE BOARD OF TRUSTEES OF THE           MOTION FOR SUMMARY JUDGMENT
     CALIFORNIA STATE UNIVERSITY,           AND DENYING PLAINTIFF'S MOTION
15                                          FOR PARTIAL SUMMARY JUDGMENT
                Defendant.
16                                          (Doc. Nos. 56, 74)

17

18        This matter is before the court on the parties' cross-motions for summary judgment.

19   Defendant Board of Trustees of the California State University ("defendant") filed a motion for

20   summary judgment on September 15, 2023.  (Doc. No. 56.)  Defendant's pending motion was

21   taken under submission on the papers pursuant to Local Rule 230(g).  (Doc. No. 66.)  Plaintiff

22   Carla Rounds ("plaintiff") filed a response and cross-motion for partial summary judgment on

23   November 6, 2023.  (Doc. No. 74.)  For the reasons explained below, defendant's motion will be

24   granted in part and denied in part and plaintiff's motion will be denied.

25                                     **BACKGROUND**

26        This case arises from plaintiff's allegations of retaliation and employment discrimination

27   on the basis of race, gender, and disability against defendant, her former employer.

28   /////

1

**A.      Factual Background[1]**

In April 2016, plaintiff Rounds began her employment for defendant, specifically as the sole information technology consultant ("ITC") at the Student Health Center ("SHC") of the Stanislaus campus of the California State University ("CSU").  (DUF ¶ 1.)  On May 27, 2016, plaintiff became the SHC Health Insurance Portability and Accountability Act ("HIPAA") IT security compliance officer, charged with ensuring the confidentiality of medical records and compliance with applicable statutes and policies.  (Doc. No. 74-2 at ¶ 3.)  In this role, plaintiff was supervised by the director of the SHC, Dr. Scott Hennes, and clinical head nurse, Amy Diaz.  (Doc. No. 56-3, Exhibit A at 105.)[2]  Plaintiff was granted permanent employee status in April 2017.  (DUF ¶ 2.)

During the time of her employment, plaintiff experienced several medical issues.  (*See* Doc. No. 74-2.)  Plaintiff suffers from recurring back and intestinal problems.  (Doc. No. 74-2 at ¶ 9.)  Plaintiff took leave for back surgery and recovery from mid-December 2016 to late-January 2017 and worked modified hours until late-February 2017.  (DUF ¶ 2.)  On June 28, 2017, plaintiff underwent surgery for an intestinal blockage, and she returned to work on July 3, 2017.  (Doc. No. 74-2 at ¶ 4.)  Plaintiff also informed Dr. Hennes of her high stress and anxiety levels several times in 2017 and 2018.  (Doc. No. 74-2 at ¶ 9.)

Unrelated to her medical issues, plaintiff also complained to Dr. Hennes about the use of space heaters in the SHC in 2016 and 2017, and she complained to head nurse Diaz about the use of space heaters in 2018, because she had concerns about the fire safety of the space heaters.

---

[1]  The relevant facts that follow are derived in part from the undisputed facts as stated by defendant and responded to by plaintiff (Doc. No. 74-4 ("DUF")) and the undisputed facts as stated by plaintiff and responded to by defendant (Doc. No. 79-3 ("PUF")), as well as the declarations filed by the parties in support of their respective briefs (Doc. Nos. 56-3, 56-4, 56-5, 58, 74-1, 74-2, 74-3, 79-1, 79-2) and the exhibits referenced therein that were not filed on the docket but were instead lodged with the court on CD.

[2]  Defendant submitted a declaration of Deputy Attorney General Fields in support of its motion.  (Doc. No. 56-3.)  Defendant attached several exhibits to this declaration which, as stated above, were submitted to the court by CD and were not filed on the docket or given docket numbers.  Accordingly, the court will refer to them using the corresponding lettering (A–J) of the exhibits as they appear on defendant's CD and will use the corresponding PDF page numbers of those documents for pin cites.

(DUF ¶ 122; Doc. No. 74-2 at ¶ 7.)  CSU policy contained exceptions allowing for the use of space heaters if required by occupants for medical conditions or other reasons.  (Doc. No. 56-3, Exhibit A at 45.)

In February 2018, Dr. Hennes expressed concerns to plaintiff regarding her leadership skills based on lengthy email conflicts between plaintiff and other staff.  (Doc. No. 56-3, Exhibit A at 29.)  In May 2018, Dr. Hennes expressed concerns to plaintiff regarding her productivity and prioritization given the amount of time she spent in areas outside her job duties.  (Doc. No. 56-3, Exhibit A at 37.)  Plaintiff was working overtime and had more IT tasks than she could handle on her own.  (DUF ¶ 7.)

In July 2018, plaintiff attended a meeting with Dr. Hennes, human resources ("HR") director Rebekah Temple, and union representatives Renee Giannani and Dawn McCulley.  (PUF ¶ 4.)  According to plaintiff, there was discussion at this meeting about plaintiff's communication style and about having more face-to-face conversations to resolve conflicts rather than sending emails.  (Doc. No. 56-3, Exhibit A at 201.)  Also, according to plaintiff, she stated at this meeting "that she was being harassed and a hostile work environment [was] created due to her gender, disability and age."  (Doc. No. 74-2 at ¶ 6.)

On August 9, 2018, plaintiff met with CSU Stanislaus IT manager Wade Williams, client services director Matt Collins, chief information officer Nathan Zierfuss-Hubbard, and network engineer Al Speckens, to discuss a new secure wireless project in the SHC.  (Doc. No. 74-2 at ¶ 48.)  During this meeting, plaintiff made disclosures to the IT management members about security issues within the SHC.  (*Id.*)

In the fall of 2018, Dr. Hennes called plaintiff "dissociative" and "obsessive compulsive" in front of other employees.  (Doc. No. 74-2 at ¶ 10.)

In September 2018, defendant hired Jerry Gomez to also work as an ITC with plaintiff in the SHC.  (Doc. No. 74-2 at ¶ 8.)  On one occasion, Gomez told plaintiff that plaintiff's daughter, who is biracial, did not look like plaintiff, who is white.  (DUF ¶ 38.)  According to plaintiff, on several occasions Gomez and head nurse Diaz spoke Spanish at work in front of her.  (Doc. No. 56-3, Exhibit A at 152–53.)

In November 2018, SHC staff reported plaintiff as the aggressor in an argument with Gomez that took place in the office.  (DUF ¶ 9.)  According to plaintiff, she and Gomez had a difference of opinion, in which they both raised their voices, regarding changes that Gomez had made to computers without discussing those changes with plaintiff in advance.  (Doc. No. 56-3, Exhibit A at 108.)  During the argument, Gomez told plaintiff "[y]ou are never to speak to me like that again.  Not even my wife talks to me that way."  (Doc. No. 74-2 at ¶ 38.)

On December 3, 2018, CSU placed plaintiff on paid administrative leave ("PAL").  (DUF ¶ 9; Doc. No. 56-3, Exhibit J at 2.)  While on PAL, defendant did not ask plaintiff to perform any work, and she continued to receive her pay and benefits.  (DUF ¶ 48.)  On December 11, 2018, HR director Rebekah Temple interviewed Gomez about the argument with plaintiff.  (Doc. No. 56-5 at ¶ 5.)  According to defendant, during that interview, Gomez alleged that plaintiff had also threatened him with violence and engaged in unprofessional conduct of a sexual nature.  (*Id.*)  Specifically, Gomez informed Temple that plaintiff said she would shoot him at least three to four times between September and November 2018, and plaintiff showed him pictures of a nude woman.[3]  (DUF ¶¶ 10–11.)  Temple spoke to other SHC employees about the November 28, 2018 argument.  (Doc. No. 56-5 at ¶ 6.)  SHC employee Pauline Clanton told Temple that she felt unsafe around plaintiff because plaintiff had previously been in the military and knows how to use a gun.  (*Id.*; DUF ¶ 12.)[4]  Clanton also informed Temple that someone told her that they had seen a student assistant giving plaintiff a neck massage.  (Doc. No. 56-5 at 25.)

On December 19, 2018, Temple met with plaintiff concerning her November 28, 2018 argument with Gomez.  (Doc. No. 56-3, Exhibit A at 53–58.)  Dawn McCulley and Andy Heller, plaintiff's union representatives, were also present.  (Doc. No. 80-6 at 56.)  Temple hoped that,

---

[3] Plaintiff purports to dispute these facts by challenging the truth of what Gomez told Temple (i.e., that plaintiff said she would shoot him and that plaintiff showed him pictures of a nude woman), but plaintiff does not actually dispute that Gomez made these statements to Temple. (DUF ¶¶ 10–11.)

[4] Plaintiff objects to the evidence cited in support of this undisputed fact on the grounds that Clanton's statement to Temple constitutes hearsay.  (DUF at ¶ 12.)  However, the court does not deem these statements to be hearsay because they are being considered not for the truth of the matter asserted, but rather for their effect on the listener.

after discussing why plaintiff was out on PAL so that this type of workplace interaction would not happen again, they could discuss plaintiff returning to work.  (*Id*. at 59.)  However, the meeting lasted only a few minutes, and Heller instructed plaintiff not to answer any of Temple's questions.  (*Id*. at 55.)  During this short meeting, plaintiff also reported Gomez's behavior from the argument and "other discriminatory instances" to Temple.  (Doc. No. 74-2 at ¶ 13.)  At some point after the meeting, Temple informed senior associate HR vice president, Julie Johnson, that she believed it was best to return plaintiff to the workplace.[5]  (Doc. No. 56-3, Exhibit F at 10.)

On March 4, 2019, while on PAL, plaintiff submitted a written complaint to the California State Auditor and the CSU Chancellor (and provided a courtesy copy to CSU Stanislaus) regarding alleged HIPAA and other statutory violations.  (DUF ¶ 128.)  In that complaint, plaintiff named five CSU employees as respondents:  Gomez, Diaz, Dr. Hennes, Dr. Sergio Mazon (a primary care physician in the SHC), and Bronda Nidey (and administrative specialist in the SHC).  (Doc. No. 74-2 at 61.)  Her complaint identified a number of incidents that she believed posed possible security risks to patient data, including Gomez accessing non-CSU servers for personal projects during work hours and reviewing patient notes without a legitimate business need, Diaz taking Gomez's recommendations over plaintiff's as to addressing security requests, Dr. Hennes ignoring plaintiff's reports that SHC staff were leaving their workstations unlocked, and many more.  (*Id*. at 58–79.)  According to Johnson, HR's investigation of plaintiff was at this point paused, and Johnson began investigating the matters raised in plaintiff's written complaint.  (Doc. No. 56-4 at ¶ 5.)

Due to plaintiff's allegations against Gomez, on March 5, 2019, IT officer Zierfuss-Hubbard met with Dr. Hennes and Johnson to review logs of Gomez accessing patient records.  (Doc. Nos. 80-5 at 91; 56-4 at 62.)  In that meeting, Dr. Hennes showed Zierfuss-Hubbard how to read and interpret the logs.  (Doc. No. 56-4 at 62.)  As part of his demonstration, Dr. Hennes used his own records as an example.  (*Id*.)  While looking at the logs in that meeting, Dr. Hennes noticed that plaintiff had accessed Dr. Hennes's records.  (*Id*.)  Dr. Hennes told Zierfuss-Hubbard

_____

[5]  In her deposition, Johnson could not recall exactly when Temple made this recommendation.  (Doc. No. 56-3, Exhibit F at 10.)

1   that he had not authorized plaintiff to access his records and did not know of a business reason for

2   her to do so.  (*Id*.)  Zierfuss-Hubbard, his supervisor Rafael Espinoza, and Johnson discussed the

3   issue afterwards and decided that investigation into the allegations in plaintiff's complaint should

4   be concluded before investigating this new "counterclaim" against plaintiff.  (*Id*.)  Espinoza had

5   joined CSU in August 2018 and had little to no relationship with plaintiff.  (*Id*.)

6         In April 2019, defendant terminated Gomez's employment.  (Doc. No. 80-5 at 58.)

7   According to Johnson, Temple's previous recommendation to return plaintiff to work was not

8   implemented around this time because plaintiff had filed her March 2019 complaint.  (Doc. No.

9   56-3, Exhibit F at 10.)  Johnson testified that it was a highly emotionally charged situation, and

10  the additional allegations advanced in plaintiff's March 2019 complaint made it seem as if it

11  would not be productive to simultaneously investigate those allegations and work on the

12  numerous existing workplace conflict issues.  (*Id*. at 11.)  Johnson testified that plaintiff was kept

13  on PAL to preserve the status quo and deal with the allegations made in plaintiff's complaint

14  while not creating more conflict and hostility.  (*Id*.)

15        On September 18, 2019, Johnson issued findings as to plaintiff's March 2019 complaint,

16  determining that some of plaintiff's allegations were supported and some not, and noting that the

17  university had taken appropriate personnel action and would be taking certain actions to eliminate

18  compliance or HIPAA-related issues.  (Doc. No. 56-4 at 10–35.)  Also in September 2019, Dr.

19  Hennes left CSU.  (Doc. No. 74-1 at 82.)

20        Meanwhile, the month before, in August 2019, while still on PAL, plaintiff filed another

21  written complaint with the California State Auditor and the CSU Chancellor alleging that SHC's

22  billing practices violated General Accepted Accounting Principles ("GAAP").  (DUF ¶ 129.)  On

23  October 10, 2019, the CSU Chancellor responded to plaintiff's August 2019 complaint,

24  determining that it would not be processed further and closing the complaint.  (Doc. No. 56-4 at

25  89–90.)

26        After these complaints were closed, defendant retained the law firm of Oppenheimer

27  Investigations Group LLP ("OIG") to investigate the allegation of unprofessional conduct that

28  had been made against plaintiff, which led to plaintiff being placed on PAL.  (DUF ¶ 13.)  In

March 2020, the OIG issued its first report sustaining the allegation that plaintiff had raised her voice at Gomez and showed him a nude photographer but not sustaining the allegation that plaintiff threatened to shoot Gomez or received a massage from a student.  (DUF ¶ 44.)  During discussions about bringing plaintiff back to campus in an IT role, Espinoza renewed the earlier voiced concern about plaintiff's potential breach of confidentiality.  (Doc. No. 56-4 at 63.)  Unauthorized access of medical records is a serious allegation that CSU is obligated to investigate.  (DUF ¶ 19.)  Johnson and the director of equity and compliance concluded that it was important to investigate whether plaintiff had accessed confidential medical records without authorization.  (Doc. No. 56-4 at 63.)  According to Johnson, plaintiff's PAL was then extended to allow time for a second OIG investigation.  (Doc. No. 56-4 at ¶ 7.)  On November 20, 2020, OIG issued its second report, concluding that plaintiff had accessed only demographic information that was not confidential.  (DUF ¶ 50.)

On December 1, 2020, while still on PAL, plaintiff filed another written complaint with the California State Auditor and the CSU Chancellor alleging that her coworker Vicki Salisbury, an IT analyst/programmer, had accessed patient records without authority.  (Doc. No. 74-2 at 253–61.)  On January 22, 2021, the CSU Chancellor responded to plaintiff's complaint in a written letter closing the matter and stating that a preliminary review had been conducted but the complaint would not be considered further because the totality of the circumstances did not suggest a reasonable cause to investigate.  (*Id*. at 262–64.)

According to plaintiff, in approximately March 2021, she was asked to return to work. (Doc. No. 56-3, Exhibit A at 129.)  At that time, the SHC no longer had a dedicated IT security compliance officer who reported to the director of the SHC.  (DUF ¶ 52.)  Instead, central IT workers provided technical support to the SHC.  (*Id*.)  On April 23, 2021, plaintiff and her union representatives attended a meeting with HR and the director of central IT regarding plaintiff's reassignment to central IT.  (DUF ¶¶ 53, 55.)  Plaintiff was informed during this meeting that her reassignment would include work on a new IT system that she and her new team members would receive training on at the same time.  (DUF ¶¶ 56, 57.)

/////

1   Plaintiff took medical leave after the April 23, 2021 meeting.  (DUF ¶ 59.)  She later

2   submitted a letter of resignation on July 19, 2021.  (*Id*.)  Plaintiff never returned to work for

3   defendant.  (DUF ¶ 58.)

4   **B.      Procedural Background**

5   On November 17, 2022, plaintiff filed her operative first amended complaint ("FAC").

6   (Doc. No. 31.)  This action proceeds only on the following seven claims asserted in the FAC:

7   (1) gender discrimination and retaliation in violation of the Fair Employment and Housing Act

8   ("FEHA"), California Government Code § 12940(a), (h); (2) racial discrimination and retaliation

9   in violation of FEHA, California Government Code § 12940(a), (h); (3) disability discrimination

10   and retaliation in violation of FEHA, California Government Code § 12940(a), (h);

11   (4) harassment in violation of FEHA, California Government Code § 12940(j); (5) whistleblower

12   retaliation in violation of California Labor Code § 1102.5; (6) retaliation in violation of the

13   Occupational Safety and Health Act ("OSHA"), California Labor Code § 6310; and (7) First

14   Amendment retaliation in violation of 42 U.S.C. § 1983.  (Doc. No. 31 at ¶¶ 48–94.)

15   On September 15, 2023, defendant filed the pending motion seeking summary judgment

16   in its favor as to all of plaintiff's claims.[6]  (Doc. No. 56.)  After receiving an extension of time in

17   which to do so, on November 6, 2023, plaintiff filed an opposition to defendant's motion and a

18   cross-motion for partial summary judgment in her favor on her whistleblower claim.  (Doc. No.

19   74.)  Plaintiff also concurrently filed a request for judicial notice.  (Doc. No. 74-7.)  On December

20   7, 2023, defendant filed a reply in support of its motion for summary judgment, as well as its

21   opposition to plaintiff's cross-motion for partial summary judgment.  (Doc. No. 79.)  Plaintiff

22   filed no reply in support of her cross-motion for summary judgment on her whistleblower claim.

23   **LEGAL STANDARD**

24   Summary judgment is appropriate when the moving party "shows that there is no genuine

25   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

26   Civ. P. 56(a).

27

28   [6]  On September 13, 2023, this case was reassigned to the undersigned.  (Doc. No. 55.)

8

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is

1  material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the

2  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

3  non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

4      In the endeavor to establish the existence of a factual dispute, the opposing party need not

5  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7  trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

9  order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations

10  omitted).

11      "In evaluating the evidence to determine whether there is a genuine issue of fact," the

12  court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v.*

13  *Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's

14  obligation to produce a factual predicate from which the inference may be drawn. *See Richards*

15  *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

16  Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

17  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

18  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

19  'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

20  **ANALYSIS**

21      As a preliminary matter, the court will first address plaintiff's evidentiary objections and

22  request for judicial notice.  The court will next consider whether defendant is entitled to summary

23  judgment in its favor as to each of plaintiff's claims brought against it, as well as plaintiff's cross-

24  motion for summary judgment on her whistleblower claim.

25  **A.      Plaintiff's Evidentiary Objections**

26      In her opposition to defendant's motion, plaintiff argues that two paragraphs of Johnson's

27  sworn declaration, which defendant filed in support of its motion for summary judgment, should

28  be disregarded by the court because they contain hearsay.  (Doc. No. 74 at 39.)  First, plaintiff

10

argues that the court should strike paragraph 4, wherein Johnson declares that "Ms. Rounds was the aggressor in a loud and disruptive argument at the SHC with her IT coworker Jerry Gomez." (Doc. No. 56-4 at ¶ 4.) Plaintiff argues that this statement is hearsay because "Johnson was not present during the discussion and has no personal knowledge of it." (Doc. No. 74 at 39.) The court interprets plaintiff's argument as raising two objections: one on hearsay grounds, and one based upon lack of foundation.

The court overrules plaintiff's hearsay objection. Of course, declarations are admissible forms of evidence on summary judgment. Fed. R. Civ. P. 56(c)(4). Moreover, Johnson's statement in her declaration identifying plaintiff as the aggressor in her argument with her coworker Gomez is not hearsay because it does not reflect another's out-of-court statement offered for the truth of the matter asserted. Indeed, as noted above, the parties do not dispute that in November 2018, SHC staff reported plaintiff as the aggressor in that argument. (DUF ¶ 9.)

As to foundation, Johnson's declaration states that her role as the senior associate vice president of Human Resources, Equal Opportunity, and Compliance involved overseeing HR and supervising the HR director who investigated plaintiff's workplace conflict with Gomez. (Doc. No. 56-4 at ¶¶ 2–3.) However, in her declaration Johnson does not specify whether she based her conclusion on HR director Temple's investigation, her own investigation, the OIG investigation, or some other source, and defendant has provided no clarification in their reply as to the basis for Johnson's knowledge of plaintiff's workplace argument. Accordingly, the court will sustain plaintiff's evidentiary objection and disregard this portion of paragraph 4 of the Johnson declaration. However, the court will consider the undisputed fact that SHC staff reported plaintiff as the aggressor in her argument with Gomez.

Next, plaintiff contends that the court should disregard paragraph 7 wherein Johnson declares that "CSU Stanislaus extended Ms. Rounds['s] paid administrative time off to allow for the second investigation by the Law Offices of Amy Oppenheimer." (*Id*. at ¶ 7.) Plaintiff argues that this statement is hearsay because it "is false" and contradicts Johnson's deposition testimony addressing the same subject. (Doc. No. 74 at 39.) The court overrules plaintiff's objection in this

*/////*

1    regard because any such contradiction would not provide grounds for the exclusion of that portion

2    of Johnson's declaration as hearsay.

3    **B.      Plaintiff's Request for Judicial Notice**

4          Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is

5    not subject to reasonable dispute because it:  (1) is generally known within the trial court's

6    territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

7    accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Public records are properly

8    the subject of judicial notice because the contents of such documents contain facts that are not

9    subject to reasonable dispute, and the facts therein "can be accurately and readily determined

10   from sources whose accuracy cannot reasonably be questioned." *Id.*  Documents that constitute

11   "matters of public record" may be judicially noticed.  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,

12   499 F.3d 1048, 1052 (9th Cir. 2007).

13         In connection with her opposition to the pending motion, plaintiff requests that the court

14   take notice of the following two documents:  (1) Gomez's LinkedIn page; and (2) the

15   administrative law judge's decision in an appeal plaintiff filed regarding the unemployment

16   benefits claim she submitted to the California Employment Development Department ("EDD").

17   (Doc. No. 74-7.)  Defendant has not opposed or otherwise responded to these requests.

18         Plaintiff's request that the court take judicial notice of Gomez's LinkedIn page will be

19   denied because, as California district courts have recognized, "LinkedIn is not a source whose

20   accuracy cannot be reasonably questioned." *Ibey v. Taco Bell Corp*., No. 12-cv-00583-H-WVG,

21   2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012); *see also Tijerina v. Alaska Airlines, Inc*., No.

22   22-cv-00203-JLS-BGS, 2022 WL 3135913 (S.D. Cal. Aug. 5, 2022) (denying the plaintiff's

23   requests for judicial notice of LinkedIn profiles for various employees and board members).

24         As for the administrative law judge's decision in plaintiff's EDD appeal, the court will

25   take judicial notice of the existence and contents of that decision, but not of the truth of the

26   factual findings therein.  *See Friends of the Clearwater v. Higgins*, 523 F. Supp. 3d 1213, 1222

27   (D. Idaho 2021) ("[T]he Court may take judicial notice of government documents to prove their

28   existence and contents, but not for the truth of the matters asserted therein when the facts are

disputed."); *see also Loreto v. Ariz. Bd. of Regents*, No. 22-cv-00269-TUC-JAS-AMM, 2023 WL 6636696, at *2 (D. Ariz. Sept. 8, 2023), *report and recommendation adopted*, 2023 WL 6306577 (D. Ariz. Sept. 28, 2023) (taking judicial notice of the existence and contents of three public record administrative and judicial decisions denying the plaintiff's unemployment insurance benefits claim, but not of the truth of the factual findings therein).

**C.      Motions for Summary Judgment**

      1.      <u>Plaintiff's FEHA Gender Discrimination Claim (Claim One)</u>

Under FEHA, it is unlawful for an employer "to bar or to discharge [a] person from employment" or "to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of that person's "sex, gender, gender identity, or gender expression."  Cal. Gov't Code § 12940(a).

In reviewing employees' claims that employers have engaged in discrimination in violation of FEHA, California courts rely on the three-part burden-shifting framework enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017); *Diyorio v. AT&T*, 242 F. App'x 450, 452 (9th Cir. 2007)[7]; *Clasen v. Skywest Airlines, Inc.*, No. 19-cv-460-DMG-KK, 2020 WL 7224246, at *5 (C.D. Cal. Nov. 19, 2020) (citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000)).  Under that framework, the plaintiff must first establish a *prima facie* case of discrimination by showing that:  (1) she belongs to a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests that the employer acted with a discriminatory motive.  *Guz*, 24 Cal. 4th at 355; *Perez v. Alameda Cty. Sheriffs' Office*, No. 10-cv-04181-JSW, 2014 WL 12668404, at *4–5 (N.D. Cal. Dec. 3, 2014) *aff'd*, 678 F. App'x 621, 621–22 (9th Cir. 2017).  "While the plaintiff's *prima facie* burden is not onerous, [plaintiff] must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion."  *Guz*,

---

[7]  Citation to this and other unpublished Ninth Circuit opinions in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

24 Cal. 4th at 355 (internal quotations and citations omitted).  "If the plaintiff does so, a rebuttable presumption of discrimination arises, which shifts the burden to the employer to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason." *Clasen*, 2020 WL 7224246, at *5; *see also McDonnell Douglas Corp.*, 411 U.S. at 802 ("The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection.").  "If the employer succeeds, the burden shifts back to the plaintiff to show that the employer's proffered reasons were pretext for discriminatory motive." *Id.*

> A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.
>
> If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence "must be specific" and "substantial."

*Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal citations and quotation marks omitted); *see also Wieland v. Board of Regents of Nevada System of Higher Education*, 2024 WL 810445, at *1 (9th Cir. 2024).

California courts have also noted that because the *McDonnell Douglas* test was "originally developed for use at trial, not in summary judgment proceedings," the burden is reversed when the defendant moves for summary judgment.  *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 343–44 (2008).  In moving for summary judgment, a defendant therefore must satisfy an initial burden of proving that the plaintiff's "cause of action has no merit by showing either that one or more elements of the *prima facie* case 'is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors.'"  *Husman v. Toyota Motor Credit Corp*., 12 Cal. App. 5th 1168, 1181 (2017) (quoting *Cucuzza v. City of Santa Clara,* 104 Cal. App. 4th 1031, 1038 (2002)).  "[T]o survive summary judgment, the plaintiff can offer evidence either that the employer was motivated by discrimination, or that the employer's stated reasons were not its true reasons or motivation for the adverse action."  *Diyorio*, 242 F. App'x at 452.

Defendant moves for summary judgment in its favor as to plaintiff's gender discrimination claim brought under FEHA, arguing that plaintiff has not established that she suffered an adverse employment action and has no evidence of a discriminatory motive.  (Doc.

No. 56-1 at 19–23.)  Additionally, defendant argues that even if plaintiff has established a *prima facie* case for gender discrimination, the evidence establishes that defendant had legitimate, non-discriminatory reasons for its employment actions that plaintiff has challenged.  (*Id.* at 23–25.)

a.    *Adverse Employment Action*

To determine whether an action constitutes an adverse employment action, courts distinguish between "minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee" and "adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054–55 (2005).  The relevant question is whether the actions alleged "materially affect[ed] the compensation, terms, conditions, or privileges" of the plaintiff's employment.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *see also Campbell v. Hawaii Department of Education*, 892 F.3d 1005, 1012 (9th Cir. 2018).  The court "need not . . . decide whether each alleged [] act constitutes an adverse employment action in and of itself." *Yanowitz*, 36 Cal. 4th at 1055–56 (finding it appropriate to consider the plaintiff's allegations collectively because "there is no requirement that an employer's retaliatory acts constitute one swift blow, rather than a series of subtle, yet damaging, injuries").

Plaintiff argues that a number of adverse employment actions taken by defendant support her gender discrimination claim, including that she:  (i) had job duties taken away, (ii) had challenging assignments cut off, (iii) was placed on PAL, (iv) received a disadvantageous transfer, (v) tolerated harassment by other employees, and (vi) had negative comments solicited and made about her.[8]  (Doc. No. 74 at 23.)  However, plaintiff has presented evidence on summary judgment substantiating only some of these actions, not all of them.  It is undisputed that plaintiff was placed on PAL from approximately December 2018 to April 2021 and was not asked to perform any work while on PAL, meaning she necessarily had her job duties taken away

---

[8]  Plaintiff also argues she suffered the adverse employment action of being "constructively discharged."  (Doc. No. 74 at 23.)  This argument will be disregarded because plaintiff's theory of constructive discharge was previously dismissed (Doc. No. 49 at 5–6) and no constructive discharge theory or claim remains in this case.

and was cut off from her assignments.  (DUF ¶¶ 9, 18, 25.)  As to her transfer, it is undisputed that at the time plaintiff was asked to return to work, her former position as an ITC and SHC compliance officer no longer existed, and her new position would have been in a central IT center.  (DUF ¶¶ 82, 83.)  Thus, the court will analyze whether plaintiff has made a *prima facie* showing with regard to these substantiated adverse employment actions.  However, as to plaintiff's allegations of other adverse actions taken against her, the court finds that plaintiff has not satisfied her burden.  As will be explained below in connection with plaintiff's FEHA harassment claim, plaintiff has not come forward at summary judgment with any evidence of harassment.  Further, she has not directed the court to any evidence that defendant made or solicited negative comments about her.  Rather, plaintiff simply points to her own declaration, in which she vaguely states that defendant "solicited negative comments about [her] from [her] coworkers," without providing any evidence substantiating this conclusory assertion.  (Doc. No. 74-2 at ¶ 24.)  Accordingly, the court will grant summary judgment in favor of defendant as to plaintiff's FEHA gender discrimination claim to the extent that claim is predicated on the allegedly adverse employment actions of harassment or negative comments.

Next, the court considers if plaintiff has established a triable issue of fact as to whether defendant's actions of placing her on PAL and the associated loss of job duties, loss of assignments, and ultimate transfer offer constitute an adverse employment action.

"[U]nder some circumstances, placement on administrative leave can constitute an adverse employment action."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (finding that the plaintiff had sufficiently alleged that he was subject to an adverse employment action where he claimed that he was placed on PAL and subsequently was unable to take a promotional exam, lost opportunities for holiday pay, and was prevented from gaining further job-related experience).  Indeed, district courts in this circuit have found that placement on PAL in combination with other employment related consequences can also constitute an adverse action.  *See Rattie v. Balfour Beatty Infrastructure, Inc.*, No. 22-cv-05061-RS, 2023 WL 8115047, at *5 (N.D. Cal. Nov. 22, 2023) (finding that the defendant had not established a lack of genuine dispute on the issue of whether the plaintiff had suffered an adverse employment action

1    where the plaintiff was placed on PAL and the employer terminated his network access); *Perez v.*

2    *Brain*, No. 14-cv-03911-JAK-AGR, 2016 WL 607770, at *12 (C.D. Cal. Jan. 8, 2016) (finding a

3    triable issue of fact existed as to whether the plaintiff suffered an adverse employment action

4    where the plaintiff was placed on PAL, barred from participating in the review conducted of her

5    department, and was isolated from the office and her colleagues).

6         As noted above, here it is undisputed that plaintiff was placed on PAL and was not asked

7    to perform any work from approximately December 2018 to April 2021.  (DUF ¶¶ 9, 25.)  At

8    deposition, plaintiff testified that while on PAL for over two years, she lost out on training

9    opportunities, hands-on work, contact and collaboration with colleagues, and promotion

10   opportunities.  (Doc. No. 56-3, Exhibit A at 130.)  In her declaration submitted in opposition to

11   defendant's motion for summary judgment, she also states that during this time her access to

12   university property was restricted and she was forbidden from talking to anyone about anything

13   occurring on campus.  (Doc. Nos. 74-2 at ¶ 12; 79-3 at ¶ 9.)  Further, it is undisputed that at the

14   time that plaintiff was asked to return to work, her former position no longer existed, and her new

15   position would have been in a central IT center and not the SHC.  (DUF ¶¶ 82, 83.)  Thus, the

16   court concludes that the evidence presented by plaintiff on summary judgment regarding her

17   experience on PAL is sufficient to support her claim of an adverse employment action for

18   purposes of making a *prima facie* showing.  While the court need not determine at this stage of

19   the litigation that plaintiff suffered an adverse action as a result of these circumstances, a

20   reasonable trier of fact could find that she did.  *See Yanowitz*, 36 Cal. 4th at 1061 (emphasizing

21   that at the summary adjudication stage, the court does not determine that an alleged adverse

22   action occurred or whether it was justified, as "it remains for the trier of fact to decide whether

23   [the plaintiff's] allegations are true").

24              b.    *Discriminatory Motive*

25        Defendant also moves for summary judgment in its favor on plaintiff's FEHA gender

26   discrimination claim based on what defendant claims is plaintiff's failure to satisfy the

27   discriminatory motive prong of the *prima facie* case.  (Doc. No. 56-1 at 19.)  Specifically,

28   defendant argues that plaintiff merely speculates that she was disliked due to her gender.  In her

opposition to defendant's motion, plaintiff contends that she has come forward with evidence that she was treated differently than similarly situated male employees of the IT department.  (Doc. No. 74 at 23.)

"Disparate treatment occurs when a plaintiff is singled out on account of her . . . protected characteristic and is treated less favorably than others similarly situated."  *Leland v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1091 (N.D. Cal. 2008) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)); *see also Peterson v. Hewlett-Packard Co*., 358 F.3d 599, 603 (9th Cir. 2004) (among other things, to establish a *prima facie* case of disparate treatment, a plaintiff must show that "similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination"); *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) ("A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a *prima facie* case of discrimination"); *Solano v. Regents of Univ. of Cal.*, No. 04-cv-00357-FCD-PAN, 2005 WL 1984473, *4 (E.D. Cal. Aug. 15, 2005) ("To establish a *prima facie* case of [] discrimination, plaintiff must prove . . . the employer treated similarly situated individuals who are not in her protected class more favorably.").  "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."  *Vasquez v. Cnty. of L.A*., 349 F.3d 634, 641 (9th Cir. 2003); *see also Day v. Sears Holdings Corp*., 930 F. Supp. 2d 1146, 1162 (C.D. Cal. 2013) ("In employment discrimination cases, employees are similarly situated to a plaintiff if they perform similar work responsibilities or are guilty of similar misconduct.").

According to plaintiff, defendant's discriminatory motive is evidenced by the ways in which she was treated differently than Gomez and other male employees of the IT department.  (Doc. No. 74 at 23.)  For example, it is undisputed that after plaintiff and Gomez got into a verbal argument in their shared office, she was placed on PAL but he was not.  (DUF ¶ 9; Doc. No. 74-2 at ¶ 13.)  Then, following the allegation that plaintiff had accessed confidential medical records without authorization, her PAL was extended pending investigation.  (Doc. No. 74 at 24.)  But

/////

1  when she had accused Gomez of similar misconduct, he was allowed to continue working while

2  being investigated.  (*Id.*)

3        Plaintiff's argument in this regard is unavailing, however, because she has failed to come

4  forward with any evidence showing that she and Gomez were similarly situated with regard to the

5  events she describes.  As to the verbal argument which resulted in plaintiff's placement on PAL,

6  it is undisputed that staff in the SHC reported to HR that plaintiff was the aggressor in the

7  argument.  (DUF at ¶ 39.)  The evidence before the court on summary judgment also establishes

8  that after the argument in question but before plaintiff was placed on PAL, SHC staff members

9  made additional concerning allegations about plaintiff to HR; namely, that she had threatened gun

10  violence and that she had shown nude photographs to two of her coworkers.  (Doc. No. 56-4).

11  Therefore, the evidence on summary judgment shows that plaintiff and Gomez were not similarly

12  situated with regard to their conduct such that HR's decision to place only plaintiff on PAL gives

13  rise to an inference of discriminatory motive on the part of defendant.

14        Plaintiff also argues that when both she and Gomez faced allegations that they had

15  improperly accessed patient information, defendant exhibited gender discrimination by keeping

16  her on PAL during the investigation but permitting him to continue working.  (Doc. No. 74 at 24.)

17  However, the evidence before the court on summary judgment also does not show that plaintiff

18  and Gomez were similarly situated employees at the time of these incidents.  In this regard,

19  plaintiff does not dispute that she was already on PAL when the allegations of improperly

20  accessing information were made against her, while Gomez was not on PAL when such

21  allegations were made against him.  Plaintiff also argues that before her placement on PAL,

22  Gomez had opportunities to attend trainings or site visits that she did not have.  (Doc. No. 74 at

23  24.)  In support of this argument, plaintiff attaches as an exhibit to her declaration a list of

24  trainings that she missed out on.  (Doc. No. 74-2 at 281–82.)  Despite this evidence, plaintiff has

25  failed to show that she and Gomez were similarly situated employees, especially because plaintiff

26  has also submitted evidence suggesting that Gomez had a far higher need for training than she

27  did.  *See* Doc. No. 74-2 at ¶ 8 (Gomez had "less technical experience than [plaintiff], and unlike

28  [plaintiff] had no degree, no experience working with an Electronic Medical Records (EMR)

System, no Database experience, no SQL (programming language) experience, no experience working in higher education, and no experience working for a large corporation, and . . . far less experience than [plaintiff]").

Next, plaintiff argues that Gomez received preferential treatment because when she was ultimately taken off of PAL, she was placed on a probationary employee performance review schedule. (Doc. No. 74 at 24.) However, plaintiff provides no evidence to support this assertion, and concedes that defendant later clarified that she would not be required to complete a probationary period. (*See* Doc. No. 74-2 at 55.) Moreover, plaintiff fails to address the evidence that Gomez was terminated and not brought back to work in any form, which undercuts her assertion that he received treatment that was preferential to that received by her. Accordingly, the court finds that plaintiff has not come forward with evidence on summary judgment sufficient to make a *prima facie* showing that she and Gomez were similarly situated employees and that he received preferential treatment, as required for plaintiff's claim of gender discrimination. *See Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032 (S.D. Cal. 2019), *aff'd*, 814 F. App'x 194 (9th Cir. 2020) (finding that the plaintiff had not established a *prima facie* case of discrimination where she failed to show that she and a colleague were similarly situated by not introducing any admissible evidence that they displayed similar conduct); *see also Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Brown v. Department of Public Safety*, 446 Fed. Appx. 70, 72, 2011 WL 3240811, at *1 (9th Cir. 2011).

Finally, plaintiff argues that she has satisfied the discriminatory motive element of her *prima facie* case by presenting evidence that she was treated differently than other male employees of the IT department, not just Gomez. (Doc. No. 74 at 23.) In this regard, plaintiff argues that similarly situated male employees were not required to submit to the harassment that she was, and that defendant solicited negative comments about her but did not do so with respect to her similarly situated male colleagues. (Doc. No. 74 at 24.) As noted above, plaintiff has failed to substantiate her claims of harassment and negative comments by pointing to any evidence submitted by either party on summary judgment. Even if plaintiff had submitted

1    evidence of such harassment and negative statements, her ambiguous references to "similarly

2    situated" males is not evidence from which a reasonable jury could find any differences in

3    treatment received or improper motivation on the part of defendant, since plaintiff has failed to

4    provide evidence identifying those males she claims were similarly situated to her and evaluating

5    if they were so situated. *See Elliott v. Versa CIC, L.P.*, No. 16-cv-0288-BAS-AGS, 2019 WL

6    414499, at *13 (S.D. Cal. Feb. 1, 2019) (granting judgment as a matter of law upon a finding that

7    no "*prima facie* showing of disparate treatment" had been made where the plaintiffs' disparate

8    treatment argument was based on "vague references to 'other people'" and "plaintiffs failed to

9    provide any evidence regarding who these other individuals were" and whether they were

10   similarly situated to the plaintiffs but lacked the plaintiffs' protected characteristic).  Accordingly,

11   plaintiff has not come forward with evidence on summary judgment demonstrating a

12   discriminatory motive through defendant's treatment of her as compared to the treatment of other

13   male colleagues.

14        The reasons discussed above provide a sufficient basis upon which to grant summary

15   judgment in defendant's favor on plaintiff's FEHA gender discrimination claim.  The court

16   nevertheless will briefly address the final step of the *McDonnell Douglas* test below.

17             c.      *Legitimate, Non-Discriminatory Reason and Absence of Pretext*

18        Even assuming *arguendo* that plaintiff has made a *prima facie* showing, defendant has

19   offered on summary judgment legitimate, non-discriminatory reasons for the actions taken

20   regarding plaintiff's employment.  Defendant has presented evidence showing that prior to

21   plaintiff's placement on PAL, defendant eliminated some of plaintiff's tasks or job duties—not

22   due to gender discrimination, but because plaintiff was unable to complete all of her work in a

23   timely manner and was often spending her time on logistical matters rather than IT tasks.  (DUF

24   ¶ 7; Doc. No. 56-3, Exhibit A at 29, 37.)  As to plaintiff's placement on PAL, defendant has come

25   forward with evidence that plaintiff was placed on PAL in December 2018 after HR received

26   reports that she was the aggressor in the workplace argument and after her colleague reported to

27   HR that she had threatened him with gun violence and shown him nude photographs.  (DUF ¶¶ 9–

28   11.)  Moreover, defendant has presented evidence on summary judgment that plaintiff's PAL

1    status was extended in order to preserve the status quo while allegations regarding her improper

2    accessing of confidential medical records were investigated.  ((Doc. No. 56-3, Exhibit F at 11.)

3    Defendant has also demonstrated that when it asked plaintiff to return to work, she was

4    transferred to a different department not due to gender discrimination, but because the university

5    had in the meantime centralized its IT systems and there was no longer a dedicated IT position

6    within SHC.  (DUF ¶ 22.)  Thus, in light of these articulated reasons supported by evidence, the

7    burden shifts on summary judgment to plaintiff to present evidence of pretext.

8         To show that defendant's articulated reason for adverse action was not the true reason,

9    plaintiff "may succeed . . . either directly by persuading the court that a discriminatory reason

10   more likely motivated the employer or indirectly by showing that the employer's proffered

11   explanation is unworthy of credence."  *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256

12   (1981); *see also France v. Johnson,* 795 F.3d 1170, 1175 (9th Cir. 2015); *Chuang v. Univ. of Cal.*

13   *Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000) ("We have stated that a plaintiff can prove pretext in

14   two ways:  (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of

15   credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by

16   showing that unlawful discrimination more likely motivated the employer.").  "[C]ircumstantial

17   evidence that tends to show that the employer's proffered motives were not the actual motives

18   'must be "specific" and "substantial" in order to create a triable issue with respect to whether the

19   employer intended to discriminate . . . .'"  *Blue v. Widnall*, 162 F.3d 541, 546 (9th Cir. 1998)

20   (quoting *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1222 (9th Cir. 1998)); *see also Lindsey v.*

21   *SLT Los Angeles, LLC*, 447 F.3d 1138, 1140 (9th Cir. 2006).

22        Plaintiff has failed to meet her burden on summary judgment of coming forward with

23   evidence showing pretext.  Critically, plaintiff has not presented any evidence that defendant's

24   proffered reasons are pretext for discrimination on the basis of her gender.  In her opposition to

25   defendant's pending motion for summary judgment, plaintiff devotes only one short paragraph to

26   the issue of pretext.  (Doc. No. 74 at 38–39.)  Her only argument as to why all of defendant's

27   explanations for the actions it took are pretext for gender discrimination is that they do not

28   "address why plaintiff was treated differently than Gomez, or the male IT workers."  (Doc. No.

74 at 38.)  As explained above, the court does not find that plaintiff and Gomez or other unspecified male IT workers were similarly situated with regard to their conduct in the workplace.  Accordingly, plaintiff has presented no evidence that defendant was motivated by discrimination, or that the defendant's stated reasons for the employment-related decisions as to her were not true.

In sum, plaintiff has not presented evidence on summary judgment from which a reasonable jury could find in her favor on her FEHA gender discrimination claim.  Defendant is therefore entitled to summary judgment on this claim.

>  2.  Plaintiff's FEHA Gender Retaliation Claim (Claim One)

In her first cause of action brought pursuant to California Government Code § 12940(h), plaintiff claims that defendant retaliated against her due to her conduct in opposing gender discrimination.  "[T]o establish a *prima facie* case of retaliation, Plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two."  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  In moving for summary judgment, defendant argues that plaintiff's retaliation claim fails because she does not allege that she engaged in the protected activity of opposing practices prohibited under FEHA (e.g., opposing gender discrimination).  (Doc. No. 56-1 at 18.)  Because on summary judgment the court is not typically assessing the allegations of the complaint, the court construes defendant's argument as a challenge to the first element of the *prima facie* case that plaintiff must make in order to maintain this claim.

The statutory language of § 12940(h) indicates that protected conduct can take many forms.  Specifically, § 12940(h) makes it an unlawful employment practice "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part."  Cal. Gov't Code § 12940(h).  However, "vague or conclusory remarks that fail to put an employer on notice as to what conduct it should investigate" do not qualify as protected activity under the FEHA.  *Yanowitz*, 36 Cal. 4th at 1047.  Additionally, any "opposition must be to a policy or practice of an employer rather than its subordinates."  *Tumbling v. Merced Irrigation Dist.*, No. 08-cv-01801-LJO-DLB, 2010 WL

11450406, at *18 (E.D. Cal. Sept. 27, 2010); *see also Silver v. KCA, Inc*., 586 F.2d 138, 142 (9th Cir. 1978) ("A single unauthorized act of discrimination by a co-worker has never been held to justify 'opposition' in the sense of protecting a protesting employee from employer discipline.")

According to plaintiff, she made two different disclosures to HR that constituted protected activity:  one in July 2018 about harassment from male IT staff, SHC staff, and her male supervisor, and one in December 2018 about Gomez.  (Doc. No. 74 at 28.)  Plaintiff has not, however, supported this contention with citation to any evidence submitted to the court on summary judgment.  As for the purported July 2018 disclosure, the court notes that plaintiff states in her declaration that in a meeting with Temple, she "stated that [she] was being harassed and a hostile work environment [was] created due to [her] gender."  (Doc. No. 74-2 at ¶ 6.)  But this bare, vague statement, without any elaboration or factual development by way of evidence, is insufficient to establish a triable issue as to plaintiff's involvement in a protected activity. Plaintiff has also failed to come forward with evidence suggesting that she otherwise provided additional context to Temple such that her alleged statement to Temple was sufficiently clear to put defendant on notice about specific conduct to investigate.  As for the purported December 2018 disclosure, plaintiff states in her declaration that she reported Gomez's behavior from their workplace argument "and other discriminatory instances" to Temple.  (*Id*. at ¶ 13.)  However, this statement is similarly vague, and plaintiff has presented no evidence that this disclosure was in opposition to a policy or practice of defendant—as required to constitute protected activity— rather than simply a disagreement with one of her coworkers, which is insufficient to establish this element of a retaliation claim.  Accordingly, plaintiff has failed to present evidence on summary judgment establishing a *prima facie* case of gender-based retaliation under FEHA.  The court will therefore grant defendant's motion for summary judgment as to this claim as well.

3.    Plaintiff's FEHA Race Discrimination Claim (Claim Two)

Under FEHA, it is unlawful for an employer "to bar or to discharge [a] person from employment" or "to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of that person's "race," "color," "national origin," or "ancestry."  Cal. Gov't Code § 12940(a).  The same *McDonnell Douglas* burden-shifting

framework discussed above with regard to gender discrimination claims applies to race discrimination claims as well. *See Chisolm*, 383 F. Supp. 3d at 1048 ("[T]he plaintiff has the initial burden of establishing a *prima facie* case of discrimination. Once a *prima facie* case is shown, a presumption of discrimination arises and the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, non-discriminatory or non-retaliatory reason. Stating a legitimate, non-discriminatory, non-retaliatory reason negates the presumption of discrimination and shifts the burden back to the plaintiff to demonstrate that the proffered reason was a pretext for discrimination."). Indeed, a plaintiff must show the same elements to establish a *prima facie* case for race discrimination as gender discrimination: (1) she belongs to a protected class; (2) she was performing competently in the position she held; (3) she suffered an adverse employment action; and (4) some other circumstance suggests that the employer acted with a discriminatory motive. *Guz*, 24 Cal. 4th at 355.

Defendant moves for summary judgment on plaintiff's FEHA race discrimination claim, arguing that just as with plaintiff's claim for gender discrimination, she has not come forward with evidence satisfying the third and fourth elements of a *prima facie* case, and even if she did, defendant has put forth legitimate, non-discriminatory reasons for the events underlying her claim.

The court incorporates its analysis above and again concludes that plaintiff has made a *prima facie* showing that she suffered an adverse employment action but only as to her time on PAL, which ultimately resulted in her being offered a transfer to a different position. However, here too, the court concludes that plaintiff has not established defendant's discriminatory motive because she again relies on her unsupported disparate treatment theory that contrasts herself to Gomez. (Doc. No. 74 at 25.) In short, plaintiff states that she is Caucasian and Gomez is Hispanic, and that Gomez was similarly situated but treated more favorably than her because he was not put on PAL and was allowed to attend an important training. (Doc. No. 74 at 25.) For the same reasons discussed above, the evidence before the court on summary judgment does not show that plaintiff and Gomez were similarly situated such that defendant's decisions regarding training and placement on PAL are indicative of a race-based discriminatory motive.

25

Even if plaintiff had established a *prima facie* case, defendant's same non-discriminatory reasons as to each employment action taken as to plaintiff apply to this claim as well.  Thus, the court again finds that there has been no evidence presented on summary judgment suggesting that defendant's articulated reasons for those actions are pretextual or false; notably, plaintiff presents nothing other than a bare, conclusory argument unsupported by evidence that defendant's reasons fail to address why plaintiff was treated differently than Gomez.

For these reasons, the court concludes that defendant is entitled to summary judgment in its favor on plaintiff's FEHA race discrimination claim as well.

### 4. Plaintiff's FEHA Race Retaliation Claim (Claim Two)

In her second cause of action brought pursuant to California Government Code § 12940(h), plaintiff also alleges that defendant retaliated against her due to her conduct in opposing race discrimination.  (Doc. Nos. 31 at 35; 74 at 27–28.)  Defendant moves for summary judgment on this claim, arguing that plaintiff does not allege that she engaged in a protected activity.[9]  (Doc. No. 56-1 at 18.)  As reflected in plaintiff's opposition brief, her only purported protected activity with respect to this claim is the same December 2018 meeting with HR in which she vaguely reported on Gomez's behavior during their workplace argument.  (Doc. No. 74 at 28.)  The court has already determined that this event does not satisfy the "protected activity" element of plaintiff's *prima facie* case, because this was not a disclosure that reported on any policy or practice of defendant.  *See Silver*, 586 F.2d at 142 (noting that the plaintiff's opposition to a coworker's comment was not opposition to an employment practice and was therefore outside the scope of the retaliation provision).

Accordingly, the court will grant defendant's motion for summary judgment as to plaintiff's FEHA race retaliation claim as well.

/////

/////

---

[9]  As noted previously, on summary judgment courts do not typically examine the allegations of the complaint unless it is a verified complaint to be treated as a declaration.  Accordingly, the court again construes this argument advanced by defendant as a challenge to the first element of plaintiff's *prima facie* case.

5.      Plaintiff's FEHA Disability Discrimination Claim (Claim Three)

Under FEHA, it is unlawful for an employer "to bar or to discharge [a] person from employment" or "to discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of that person's "physical disability" or "mental disability." Cal. Gov't Code § 12940(a).  Discrimination on the basis of physical or mental disability "includes a perception that the person has" such a disability.  Cal. Gov't Code § 12926(o).  "The *McDonnell Douglas* burden-shifting framework applies to FEHA disability discrimination claims." *Quesada v. Albertson's LLC*, No. 20-cv-01407-PSG-DFM, 2022 WL 2176512, at *11 (C.D. Cal. Feb. 1, 2022).

To establish a *prima facie* case of FEHA disability discrimination, a plaintiff must show: "that he or she (1) suffered from a disability, or was regarded as suffering from a disability, (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 234–35 (2016).  The plaintiff must produce evidence showing that discrimination was a "substantial motivating factor" in the adverse employment action.  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013).

Defendant moves for summary judgment on plaintiff's FEHA disability discrimination claim, arguing that plaintiff cannot establish that she was subjected to an adverse employment action and that she offers only mere speculation that any action taken as to her was due to her disability.  (Doc. No. 56-1 at 19.)  Defendant does not challenge that plaintiff's back problems, intestinal problems, and stress/anxiety amount to a disability.  (Doc. Nos. 56-1, 79.)

a.      *Adverse Employment Action*

Unlike her FEHA gender and race discrimination claims, which plaintiff predicated on the same adverse actions, for her FEHA disability discrimination claim, plaintiff presents a slightly different list of purported adverse actions that she allegedly suffered because of her disability: (i) she was placed on a lengthy PAL, (ii) she was not allowed to go to important trainings, (iii) she was required to be subjected to coworker harassment even after complaining about it, (iv) defendant solicited negative comments about her, (v) HR's Julie Johnson ordered a coworker

27

1  to videotape plaintiff, (vi) she was placed on a probationary employee performance review

2  schedule when returning to work, and (vii) her supervisor made derogatory comments about her.[10]

3  (Doc. No. 74 at 27.)  As the court has already explained above, plaintiff's placement on PAL and

4  her inability to participate in work or training during that time is substantiated by the evidence

5  before the court on summary judgment and that evidence creates a triable issue of fact as to

6  whether plaintiff suffered an adverse employment action as to these employment related actions

7  only.[11]

8        Although plaintiff has produced evidence that her supervisor Dr. Hennes made derogatory

9  comments about her mental health, (Doc. No. 56-3, Exhibit A at 163), she has not produced any

10  evidence that these comments materially affected the compensation, terms, conditions, or

11  privileges of her employment, as is required to constitute an adverse employment action.  Plaintiff

12  also has not produced any evidence that may be considered by the court on summary judgment to

13  show that defendant directed a coworker to surveil her by videotape.  That is, plaintiff submits

14  two pieces of evidence, but both are subject to hearsay objections:  (1) plaintiff's own declaration,

15  in which she states that she had "been told by a union representative that Julie Johnson from CSU

16  Stanislaus HR had asked at least one employee to surveil [her], take video tape, and report back to

17  [Johnson];" and (2) the declaration by plaintiff's union representative McCulley, in which she

18  declares that she "had been informed by a CSU Stanislaus employee that CSU Stanislaus HR's

19  Julie Johnson had encouraged them to surveil [plaintiff], take video tape, and report back to her."

20  (Doc. Nos. 74-2 at ¶ 23; 74-3 at ¶ 9.)  Defendant points out in its reply brief (Doc. No. 79 at 12)

21  that both of these are hearsay statements and may not be considered by the court on summary

22  /////

23

24  [10]  Plaintiff also includes constructive discharge on this list of adverse employment actions, which the court will disregard for the reasons explained above.

25  [11]  Because plaintiff has not provided any evidence of coworker harassment and solicitation of

26  negative comments, these factual predicates do not support her disability discrimination claim.  In addition, because plaintiff has not presented evidence showing that she was placed on a

27  probationary employee performance review schedule and admits that defendant later clarified that she would not be required to complete a probationary period in her new position, (Doc. No. 74 at

28  14), that purported factual predicate likewise does not support her disability discrimination claim.

judgment.[12]  Notably, plaintiff has not submitted a declaration by the CSU employee who was purportedly instructed by Johnson to surveil plaintiff.  Plaintiff also does not point to any portion of Johnson's deposition testimony in which Johnson discussed giving such an instruction.

The court finds that the statements at issue are not being introduced for a non-hearsay purpose; rather, they are being offered for the truth of the matter asserted—i.e. that Johnson ordered surveillance of plaintiff.  Further, there is no applicable exception to the hearsay rule that would permit the court to consider these statements.  Even though Johnson's comment itself could fall under the exemption for a statement by a party opponent, there is no exception that applies to the CSU employee's purported out-of-court statement to McCulley about Johnson's statement directing surveillance of plaintiff.  *See Medina v. Multaler, Inc*., 547 F. Supp. 2d 1099, 1108 (C.D. Cal. 2007) (finding that the plaintiff's declaration contained inadmissible double hearsay on summary judgment where she stated that her immediate supervisor told her that two of her other supervisors questioned where her priorities were with her career in response to the news of her pregnancy).

Accordingly, the court will grant summary judgment in favor of defendant as to plaintiff's disability discrimination claim to the extent that this claim is predicated on the purported actions of Dr. Hennes's comments, Johnson's direction to videotape plaintiff, coworker harassment, solicitation of negative comments, and placement on a probationary employee performance review schedule.  However, as discussed previously, because courts have found that placement on paid leave in combination with other circumstances (such as elimination of network access or isolation from the office and colleagues) can constitute an adverse employment action, the court concludes that plaintiff has presented sufficient evidence that she suffered an adverse employment action by being placed on PAL and being unable to participate in work or training during that time.

---

[12]  The *form* of these statements does not present a hearsay issue, since the court may consider declarations on summary judgment.  *See Lentz v. Bernhardt*, No. 2:21-cv-00071-DAD-DB, 2023 WL 2424861, at *1 (E.D. Cal. Mar. 9, 2023), *aff'd*, No. 23-cv-15404, 2024 WL 3086028 (9th Cir. June 21, 2024) ("At the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form, courts instead focus on the admissibility of its contents.") (internal citation and quotation marks omitted).

1

 b. *Discriminatory Motive*

2 As evidence of a discriminatory motive, plaintiff simply asserts in a conclusory fashion

3 that "[t]here is clearly a question of material fact as to whether defendant discriminated against

4 plaintiff due to her disability" because it took adverse actions against her "even while knowing

5 that plaintiff was disabled." (Doc. No. 74 at 27.) This conclusory assertion is plainly insufficient.

6 "Whether defendant had knowledge of plaintiff's conditions is [] relevant to plaintiff's

7 claim for disability discrimination." *Webb v. Kohler Co*., No. 2:20-cv-11734-AB-MRW, 2022

8 WL 2284581, at *3 (C.D. Cal. Mar. 23, 2022). This is because a behavior that necessarily results

9 from a known disability "is considered to be part of the disability," meaning that if an employer is

10 aware that their employee has a disability, and they take an adverse employment action because

11 of such a behavior, that behavior does not serve as a "separate basis" to justify the action.

12 *Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001); *see id.* at 1130,

13 1140 (denying the defendant's motion for summary judgment where the plaintiff was diagnosed

14 with OCD and her physician had sent a letter to the defendant explaining the diagnosis and that

15 the OCD was "directly contributing to her problems with lateness," because "a jury could

16 reasonably find the requisite causal link between a disability of OCD and [the plaintiff's]

17 absenteeism and conclude that [the defendant] fired [the plaintiff] because of her disability"); *see*

18 *also Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 946 (9th Cir. 2015). Here, there is no evidence

19 before the court on summary judgment that defendant took the adverse action of placing plaintiff

20 on a lengthy PAL due to conduct resulting from her back, gastrointestinal, or stress-related

21 disabilities. Therefore, the court finds that defendant's knowledge of plaintiff's disability is not

22 sufficient evidence that discrimination was a "substantial motivating factor" in the adverse

23 employment action, as required. *See Harris*, 56 Cal. 4th at 232.

24 Accordingly, the court will grant summary judgment in favor of defendant on plaintiff's

25 FEHA disability discrimination claim. *See Quesada*, 2022 WL 2176512, at *8 (finding that the

26 plaintiff failed to establish a *prima facie* case of disability discrimination under FEHA where he

27 "point[ed] to no evidence of a causal link between his disability or perceived disability and his

28 /////

1    termination, much less that any disability or perceived disability was a substantial motivating

2    factor for his termination").

3              6.      Plaintiff's FEHA Disability Retaliation Claim (Claim Three)

4        In her third cause of action brought pursuant to California Government Code § 12940(h),

5    plaintiff also alleges retaliation based on her conduct in opposing disability discrimination.  (Doc.

6    Nos. 31 at 36; 74 at 27.)  Defendant moves for summary judgment on this claim, arguing that

7    plaintiff does not allege that she engaged in a protected activity of opposing practices prohibited

8    under FEHA, e.g., discrimination on the basis of disability.[13]  (Doc. No. 56-1 at 18.)  In her

9    opposition, plaintiff argues that the protected activities underlying this claim are the same

10   disclosures she made in the July and December 2018 meetings with HR that she referenced for

11   her gender and race retaliation claims.  (Doc. No. 74 at 28.)

12       For the same reasons the court explained above, the court again concludes that these

13   purported disclosures are too vague and unspecific to serve as evidence of plaintiff's involvement

14   in the protected activity of opposing defendant's policies or practices as is required.  Accordingly,

15   the court will grant defendant's motion for summary judgment in its favor on plaintiff's disability

16   retaliation claim as well.

17             7.      Plaintiff's FEHA Harassment Claim (Claim Four)

18       FEHA prohibits harassment in the workplace.  Cal. Gov't Code § 12940(j)(1).

19   "[H]arassment focuses on situations in which the social environment of the workplace becomes

20   intolerable because the harassment (whether verbal, physical, or visual) communicates an

21   offensive message to the harassed employee."  *Roby v. McKesson Corp*., 47 Cal. 4th 686, 706

22   (2009); *Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 869 (2014).  That is, "harassment

23   refers to bias that is expressed or communicated through interpersonal relations in the

24   workplace."  *Roby*, 47 Cal. 4th at 707; *Serri*, 226 Cal. App. 4th at 869.  A workplace may give

25   rise to liability when it is permeated with discriminatory intimidation, ridicule, and insult that are

26

27   _____
     [13]  Again, on summary judgment courts do not typically examine the complaint's allegations,
     unless it is a verified complaint to be treated as a declaration.  Accordingly, the court construes
28   defendant's argument as a challenge to the first element of plaintiff's *prima facie* case.

1   sufficiently severe or pervasive so as to alter the conditions of the victim's employment and

2   create an abusive working environment. *Lyle v. Warner Bros. Television Prods*., 38 Cal. 4th 264,

3   279 (2006).  "However, FEHA is not a 'civility code,' and it does not outlaw . . . vulgar conduct

4   that merely offends." *Robles v. Agreserves, Inc*., 158 F. Supp. 3d 952, 983 (E.D. Cal. 2016)

5   (citing *Lyle*, 38 Cal. 4th at 291).

6        To prevail on a harassment claim, a plaintiff must demonstrate that:  (1) she is a member

7   of a protected group, (2) she was harassed because she belonged to this group, and (3) the alleged

8   harassment was so severe that it created a hostile work environment.  *Lawler v. Montblanc N.*

9   *Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013).  Plaintiff must show a "concerted pattern of

10  harassment of a repeated, routine or a generalized nature," and "generally cannot recover for

11  harassment that is occasional, isolated, sporadic, or trivial." *Id.* (quoting *Lyle*, 38 Cal. 4th at 283).

12  In analyzing the objective hostility of a working environment, courts look to the totality of the

13  circumstances surrounding the plaintiff's claim.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,

14  270–71 (2001).  That includes assessing the "frequency of the discriminatory conduct; its

15  severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance;

16  and whether it unreasonably interfere[d] with an employee's work performance." *Id*. (citation

17  omitted).

18       Defendant argues that it is entitled to summary judgment on plaintiff's FEHA harassment

19  claim because there is no evidence before the court on summary judgment that plaintiff

20  experienced harassment due to her protected characteristics that was severe or pervasive.  (Doc.

21  No. 56-1 at 26.)  As a preliminary matter, the court notes that plaintiff has not clearly articulated

22  the incidents of harassment that underlie this claim.  Defendant denotes five distinct actions or

23  events that it believes form the basis of plaintiff's harassment claim because plaintiff discussed

24  these incidents at her deposition when she was asked about her claim that she was harassed on the

25  basis of gender, race, and disability:  (1) coworkers would work around plaintiff, bypass her, or

26  not ask for her IT assistance because they preferred certain male coworkers; (2) during their

27  workplace argument, Gomez told plaintiff that his "wife doesn't talk to [him] that way;"

28  (3) Gomez commented that plaintiff's daughter, who is biracial, did not look like plaintiff, and

1    that plaintiff's grandson did not look like plaintiff's daughter; (4) Gomez and another coworker

2    spoke to each other in Spanish and plaintiff could not understand them; and (5) Dr. Hennes called

3    plaintiff "OCD and dissociative." (Doc. Nos. 56-1 at 25–26; 79 at 11–12.)

4        In her opposition, plaintiff does not advance arguments with regard to any of these

5    specific events; she merely argues that she was subjected to a "list" of unwelcome protected class

6    harassment. (Doc. No. 74 at 30.) It appears to the court that plaintiff is referring to the list of

7    adverse actions that she provided in the section of her opposition brief addressing her FEHA

8    discrimination claims. (*See* Doc. No. 74 at 28–29.) However, many of the items on plaintiff's

9    list of adverse actions are not relevant to harassment, which is expressed through "interpersonal

10   relations in the workplace." *Roby*, 47 Cal. 4th at 707. For example, plaintiff listed her placement

11   on PAL as an adverse action, but nowhere does she explain how that action would also support a

12   claim for harassment.[14]

13       Accordingly, the court will grant summary judgment in favor of defendant on plaintiff's

14   FEHA harassment claim to the extent that claim is predicated on plaintiff's vague reference to a

15   "list" of incidents of harassment that she was subjected to. The court next analyzes the five

16   events that defendant has identified as specific factual predicates for plaintiff's harassment claim.

17       The first two actions—coworkers bypassing plaintiff and Gomez telling plaintiff that his

18   "wife doesn't talk to [him] that way"—pertain to plaintiff's claim of gender harassment.

19   _____

20   [14]  Plaintiff cannot summarily use the same adverse actions, including her placement on PAL, to
     support both her harassment and discrimination claims because "California courts have drawn
21   certain lines between harassment and discrimination claims." *Demma v. Beatport, LLC*, No. 23-
     cv-05090-WHO, 2023 WL 8587624, at *3 (N.D. Cal. Dec. 11, 2023). "Although both require
22   membership in a protected group, actions are not generally harassment under FEHA if they are
     'of a type necessary to carry out the duties of business and personnel management,' such as
23   'hiring and firing, job or project assignments, office or work station assignments, promotion or
     demotion, performance evaluations, the provision of support, the assignment or non-assignment
24   of supervisory functions, deciding who will and who will not attend meetings, [and] deciding who
     will be laid off.'" *Id*. (quoting *Janken v. GM Hughes Elecs*., 46 Cal. App. 4th 55, 64–65 (1996)).
25   Those "actions may retrospectively be found discriminatory if based on improper motives, but in
     that event the remedies provided by the FEHA are those for discrimination, not harassment."
26   *Janken*, 46 Cal. App. 4th at 65. In contrast, harassment "consists of actions outside the scope of
     job duties which are not of a type necessary to business and personnel management." *Lawler*,
27   704 F.3d at 1245. Thus, plaintiff's reference in the section of her brief addressing her harassment
     claim referring the court to her "list" of actions supporting her discrimination claim is unavailing.

28

However, plaintiff has presented no evidence that her coworkers bypassed her due to her gender. In fact, it is undisputed that SHC staff sometimes asked plaintiff's white female coworker Vickie Salisbury instead of plaintiff to resolve their IT tasks (DUF ¶ 35), suggesting that any decision to work around or bypass plaintiff was not motivated by gender.  As to Gomez's comment that plaintiff spoke to him in a way that his "wife doesn't talk to [him]," this singular, somewhat vague comment does not amount to the pattern necessary to demonstrate gender harassment under FEHA.  *See Ostly v. City & Cnty. of San Francisco*, No. 21-cv-08955-EMC, 2023 WL 4053800, at *14 (N.D. Cal. June 15, 2023) (finding that a single mention of the plaintiff's age made by an employee who did not terminate the plaintiff's employment "does not qualify as harassment").  In light of the undisputed evidence before it, the court will grant defendant's motion for summary judgment on plaintiff's harassment claim to the extent it is predicated on these actions.

The third and fourth incidents—Gomez's comment about the appearance of plaintiff's daughter and grandson, and Gomez and a coworker speaking in Spanish in plaintiff's presence—pertain to plaintiff's claim of harassment on the basis of race and are the only two instances plaintiff could recall during her deposition when she was asked to describe instances at CSU when she was treated differently because of her race.  (Doc. No. 56-3, Exhibit A at 152–54.)  For the same reasons that Gomez's comment about his wife does not support a claim of harassment, his comment about the appearances of members of her biracial family also does not qualify as harassment because it was an isolated comment that was not disparaging of plaintiff's race.  *See Ostly*, 2023 WL 4053800, at *14 (granting summary judgment in favor of the defendants where the plaintiff's evidence of harassment was one isolated comment that was "not even disparaging [the] plaintiff for his age").  The court notes that plaintiff testified at deposition that on several occasions, certain of her coworkers spoke to each other in Spanish in front of her, which made her feel extremely uncomfortable and alienated.  (Doc. No. 56-3, Exhibit A at 152–54.)  However, plaintiff also testified that she was not aware of any facts demonstrating that these coworkers did so in order to offend her.  (*Id.* at 153.)  Consequently, there is no evidence before the court on summary judgment to show that these incidents of coworkers speaking in Spanish while in plaintiff's presence constituted harassment of plaintiff on the basis of her race.  *See Gordon v. Bd.*

34

1  *of Trs. of Univ. of Illinois-Chicago*, No. 19-cv-05226, 2021 WL 4439429, at *10 (N.D. Ill. Sept.

2  27, 2021) (finding that a reasonable jury could not conclude that various incidents, including a

3  coworker "talking about [the plaintiff] in a foreign language" could "combine to constitute a

4  hostile work environment"); *cf Means v. City & Cnty. of San Francisco, Dep't of Pub. Health*,

5  749 F. Supp. 2d 998 (N.D. Cal. 2010) (denying summary judgment as to the plaintiff's FEHA

6  harassment claim where she recounted instances of other nurses speaking in Tagalog to call her a

7  phrase which translated to "black and ugly").  Accordingly, the court will also grant defendant's

8  motion for summary judgment on plaintiff's FEHA harassment claim to the extent that claim is

9  predicated on these race-related actions.

10      The fifth and final incident, in which Dr. Hennes called plaintiff "OCD" and

11  "dissociative," relates to plaintiff's claim of harassment on the basis of disability.  In her

12  declaration, plaintiff states that in the fall of 2018, Dr. Hennes made derogatory comments about

13  her stress and anxiety, calling her dissociative and obsessive compulsive in front of other

14  employees.  (Doc. No. 74-2 at ¶ 10.)  In assessing the objective hostility that such an action would

15  introduce into a working environment, the fact that these comments were purportedly made in

16  front of other employees increases the level of humiliation for plaintiff.  However, plaintiff has

17  not come forward with evidence showing a pattern of harassment or offered any specific facts to

18  support that this was more than a "mere offensive utterance" that was heard by others.  *Clark*

19  *Cnty. Sch. Dist.*, 532 U.S. at 270–71.  Accordingly, in light of the showing required to

20  demonstrate a hostile work environment, this conduct is not sufficiently severe and pervasive to

21  support a FEHA harassment claim.  *See Steinmetz v. Golden State Supply, Inc*., No. 07-cv-06155-

22  JFW-E, 2008 WL 11336824, at *5 (C.D. Cal. Apr. 15, 2008) (granting summary judgment in the

23  defendant's favor on the plaintiff's FEHA claim even though the plaintiff had testified at

24  deposition to *several* examples of the defendant's "juvenile and boorish" behavior, because there

25  was still "no evidence that it was sufficiently severe and perverse to create a hostile work

26  environment") (emphasis added); *Kodwavi v. Intercontinental Hotels Grp. Res., Inc*., 966 F.

27  Supp. 2d 971, 987 (N.D. Cal. 2013) (finding that the plaintiff's evidence of ten occasions in

28  which his supervisor called him "You Pakistani" or "stupid Pakistani" or asked him "You are

1    Pakistani, right?" was not enough to constitute severe or pervasive harassment on account of

2    national origin); *Rosas v. Town of Windsor*, No. 04-cv-05231-SI, 2005 WL 2999500, at *6 (N.D.

3    Cal. Nov. 8, 2005) (finding that "five offensive comments and incidents over a thirteen year

4    period," "[w]hile not admirable . . . do not satisfy the standards established for objective hostility

5    of a work environment").  Defendant is therefore entitled to summary judgment on plaintiff's

6    FEHA harassment claim to the extent the claim is predicated on disability-related action as well.

7         In sum and for the reasons explained above, the court will grant defendant's motion for

8    summary judgment as to all aspects of plaintiff's FEHA harassment claim.

9              8.    Plaintiff's Labor Code § 1102.5 Retaliation Claim (Claim Five)

10        California Labor Code § 1102.5, also known as California's Whistleblower Protection

11   Act, provides that "[a]n employer . . . shall not retaliate against an employee for disclosing

12   information . . . to a person with authority over the employee . . . if the employee has reasonable

13   cause to believe that the information discloses a violation of state or federal statute."  Cal. Lab.

14   Code § 1102.5(b).  "A whistleblower-retaliation claim under California Labor Code section

15   1102.5(b) involves a two-step burden-shifting process."  *Melendrez v. All Kids Acad.*, No. 22-cv-

16   01725-AGS-DDL, 2023 WL 6237979, at *2 (S.D. Cal. Sept. 25, 2023).  "First, it must be

17   'demonstrated by a preponderance of the evidence' that the employee's protected whistleblowing

18   was a 'contributing factor' to an adverse employment action."  *Lawson v. PPG Architectural

19   Finishes, Inc.*, 12 Cal. 5th 703, 712 (2022) (quoting Cal. Labor Code § 1102.6).  A contributing

20   factor includes "any factor, which alone or in connection with other factors, tends to affect in any

21   way the outcome of the decision."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 461 (9th Cir. 2018).

22   "Courts have analyzed the first-step contributing factor requirement similarly to the causal link

23   element of the traditional *McDonnell Douglas* framework because under both tests, the plaintiff

24   bears an initial burden to show by a preponderance of the evidence that some causal connection

25   exists between the alleged protected activity and the alleged adverse employment action."

26   *Beyenhof v. Schwan's Consumer Brands, Inc.*, No. 22-cv-00192-MWF-RAO, 2023 WL 4203500,

27   at *11 (C.D. Cal. Apr. 17, 2023).

28   /////

1   "Once the plaintiff has made the required showing, the burden shifts to the employer to

2   demonstrate, by clear and convincing evidence, that it would have taken the action in question for

3   legitimate, independent reasons even had the plaintiff not engaged in protected activity."

4   *Lawson*, 12 Cal. 5th at 718.  However, the plaintiff need not then "prove that an employer's

5   proffered legitimate reason for taking an adverse action was a pretext for impermissible

6   retaliation" as is required at the third step of *McDonnell Douglas*.  *Lawson*, 12 Cal. 5th at 715.

7   Under § 1102.6, the "plaintiff does not need to show that the employer's nonretaliatory reason

8   was pretextual," and the plaintiff "still carries the burden assigned by statute if it is shown that the

9   employer also had at least one retaliatory reason that was a contributing factor in the action."  *Id*.

10   at 716.

11        Here, plaintiff predicates her whistleblower claim on several distinct actions taken by her

12   which she claims each constitute protected activity.  (Doc. No. 74 at 31–32.)  The court evaluates

13   each purported protected activity in turn below.

a.   *Space Heater Disclosures*

15        "An employee engages in activity protected by the statute when the employee discloses

16   'reasonably based suspicions' of illegal activity."  *Erhart v. BofI Holding, Inc*., 612 F. Supp. 3d

17   1062, 1108 (S.D. Cal. 2020) (quoting *Green v. Ralee Eng'g Co*., 19 Cal. 4th 66, 87 (1998)).

18   Plaintiff states in her declaration that she made numerous disclosures to her supervisors about the

19   portable heaters that employees in the SHC were using and her concerns that they did not turn off

20   automatically and were hot to the touch.  (Doc. No. 74-2 at ¶ 7.)  However, plaintiff directs the

21   court to no evidence presented on summary judgment supporting her apparent belief that using

22   these space heaters at work constituted illegal activity.  Consequently, plaintiff has not met her

23   burden to show that she engaged in a protected activity as required.  Therefore, the court will

24   grant summary judgment in favor of defendant on plaintiff's whistleblower claim to the extent

25   that claim is predicated on plaintiff's space heaters disclosures.

b.   *Harassment Disclosures*

27        Next, plaintiff predicates her retaliation claim on disclosures she made to HR about

28   experiencing harassment.  She refers to "at least two occasions" in 2018 where she made

37

1    protected disclosures to HR about Gomez harassing her and creating a hostile work environment.

2    (Doc. No. 74 at 31.)  But plaintiff has not presented evidence to the court on summary judgment

3    of the content of any of these purported disclosures.  Plaintiff simply states in her declaration that

4    in the July 2018 meeting, she "stated that [she] was being harassed and a hostile work

5    environment created due to [her] gender, disability and age." (Doc. No. 74-2 at ¶ 6.)  Plaintiff

6    also declares that during the December 19, 2018 meeting, she reported "Gomez's behavior from

7    [November] 28, 2018 and other discriminatory instances." (*Id.* at ¶ 13.)  Plaintiff offers no

8    additional evidence regarding the content of her disclosures to HR in this regard.  As a result,

9    plaintiff has not satisfied her burden to show that her disclosures involved reasonably based

10   suspicions of illegal activity.  Accordingly, the court concludes based on the evidence before it on

11   summary judgment that plaintiff has not shown that she engaged in protected activity in

12   connection with either of these purported disclosures.

13                      c.      *HIPAA Privacy and Security Disclosures*

14          Plaintiff also predicates her whistleblower claim on two different meetings in which she

15   disclosed security issues within the SHC:  a meeting with IT management on August 9, 2018 and

16   a meeting in December 2018 with Temple.  (Doc. No. 74-2 at ¶ 48.)  As to these factual

17   predicates, plaintiff's claim clearly fails because she does not even attempt to show a link

18   between these meetings and any adverse employment action.[15]  As to the first meeting, she points

19   to no evidence that IT management was involved in any way in her placement on PAL, and she

20   also fails to identify any evidence before the court suggesting that IT management informed

21   anyone with authority over plaintiff's employment about their meeting.  The court therefore

22   concludes that she has not demonstrated that any subsequent employment action taken against her

23   could have been in retaliation for her disclosures made at this meeting.  *See Navarro v. DHL*

24   *Glob. Forwarding*, No. 2:15-cv-05510-CAS-E, 2017 WL 901880, at *12 (C.D. Cal. Mar. 6,

25   2017) ("Retaliation can only be shown by demonstrating first that the employer was aware that

26

27   _____

     [15]  As discussed throughout this order, the only adverse employment action that plaintiff has
     substantiated with evidence is her placement on PAL and corresponding inability to access

28   trainings and assignments while on PAL.

                                                      38

1    the plaintiff had engaged in the protected activity.").  As to the second meeting, there is no causal

2    link shown because that second meeting took place shortly *after* plaintiff was placed on PAL, and

3    she does not argue that the meeting is causally linked to any subsequent adverse employment

4    action.  In fact, in her opposition to defendant's motion for summary judgment, plaintiff appears

5    to have abandoned any argument as to a causal link between either of these two meetings and any

6    adverse employment actions.  (Doc. No. 74 at 33–34.)  Accordingly, the court will grant summary

7    judgment in favor of defendant on plaintiff's whistleblower claim to the extent that claim is

8    predicated on her disclosures concerning privacy and security at the August 9, 2018 and

9    December 2018 meetings.

10             d.      *Plaintiff's Three Whistleblower Complaints*

11             Lastly, plaintiff predicates her whistleblower claim on the three written disclosures she

12   filed with the California State Auditor and the CSU Chancellor in March 2019, August 2019, and

13   December 2020.  (Doc. No. 74 at 32.)

14                        i.      March 2019 Disclosure

15             Defendant first argues that plaintiff has failed to carry her burden on the first step of the

16   analysis because plaintiff's March 2019 complaint details workplace policy violations, not

17   unlawful activity, and therefore does not constitute protected activity.  (Doc. No. 56-1 at 27.)

18   However, construing the evidence on summary judgment in the light most favorable to plaintiff, a

19   reasonable factfinder could conclude that she disclosed reasonably-based suspicions of violations

20   of HIPAA law, particularly since her complaint notes that she observed Gomez access and review

21   patient notes, lab results, and scanned documents without a legitimate business need to do so.

22             Next, defendant renews its argument that plaintiff did not suffer any adverse employment

23   action.  As discussed above, the court has also determined that a reasonable trier of fact could find

24   that plaintiff's placement on PAL and extension of PAL in this case constitutes an adverse

25   employment action.

26             Finally, defendant argues that plaintiff cannot show that this March 2019 disclosure was a

27   contributing factor to any adverse employment action, because plaintiff has not submitted any

28   evidence to show that a decision maker was motivated by this complaint in extending her PAL.

1  (*Id.* at 28.)  Because a contributing factor must simply affect in any way the outcome of a

2  decision, plaintiff may meet her burden of proving unlawful retaliation even when "other,

3  legitimate factors also contributed to the adverse action."  *Lawson*, 12 Cal. 5th at 713–14.  Here,

4  it is clear that defendant was aware of plaintiff's March 2019 complaint, since plaintiff submitted

5  her written complaint to the CSU Chancellor, provided a courtesy copy to CSU Stanislaus, and

6  according to Hubbard's testimony, he, Hennes, and Johnson discussed her allegations the very

7  next day.  (DUF ¶ 128; Doc. Nos. 80-5 at 91; 56-4 at 62.)  Plaintiff has also provided evidence

8  through deposition testimony that shortly after she filed her complaint, a decision was made to

9  keep her on PAL and not return her to work, despite Temple's previous recommendation that she

10  be allowed to return to work.  (Doc. No. 56-3, Exhibit F at 10–11.)  Plaintiff has therefore

11  established that there is at least a triable issue of fact as to whether her filing the March 2019

12  complaint was a contributing factor in the decision to extend her time on PAL.  Accordingly, the

13  burden shifts to defendant to demonstrate, by clear and convincing evidence, that it would have

14  extended her PAL for legitimate, independent reasons even if she had not filed the March 2019

15  complaint.  *See Lawson*, 12 Cal. 5th at 718; *see also* Cal. Lab. Code § 1102.6 ("[T]he employer

16  shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged

17  action would have occurred for legitimate, independent reasons even if the employee had not

18  engaged in activities protected by Section 1102.5.").

19       Defendant has not carried its burden to establish on summary judgment by clear and

20  convincing evidence that based on the undisputed facts, it would have extended plaintiff's PAL

21  for legitimate, independent reasons even if she had not filed her March 2019 complaint with the

22  California State Auditor and the CSU Chancellor regarding alleged HIPAA and other purported

23  statutory violations.  Defendant simply argues that the undisputed facts show that plaintiff was

24  initially placed on PAL because of her coworkers' allegations against her, and her PAL was

25  extended to investigate the later allegation of improper access to patient records, which both

26  parties agree is a serious allegation that defendant was obligated to investigate.  (Doc. No. 56 at

27  28–29.)

28  /////

1    The court notes that the initial reason for plaintiff's placement on PAL is not relevant to

2    this analysis because the adverse action at issue is the extension of plaintiff's placement on PAL.

3    Further, defendant has not pointed to evidence that plaintiff's PAL would have been extended

4    notwithstanding her filing of the March 2019 complaint.  Rather, the evidence before the court on

5    summary judgment demonstrates that plaintiff's March 2019 complaint led to a review of patient

6    file access which resulted in the allegation of improper accessing of files being made against her.

7    Further, there is evidence suggesting that the new allegations against plaintiff were not

8    investigated for a full year, and that instead, a reason for keeping her on PAL was because she

9    filed the March 2019 complaint and HR made a determination that there was still an emotionally

10   charged situation between plaintiff and her coworkers and it would not be productive to return

11   plaintiff to work at that time.[16]  There also appears to be conflicting evidence regarding whether

12   defendant was still investigating plaintiff's workplace conflict at the time that she filed her March

13   2019 complaint or whether defendant was prepared to bring plaintiff back to work and delayed

14   that decision once she filed her complaint.  For these reasons, the court concludes defendant has

15   not carried its burden of demonstrating by clear and convincing evidence that plaintiff's PAL

16   would have been extended even had she not filed her March 2019 complaint.  Accordingly, the

17   court will deny defendant's motion for summary judgment in its favor on plaintiff's

18   whistleblower claim to the extent that claim is predicated on her March 2019 filing with the

19   California State Auditor and the CSU Chancellor alleging HIPAA and other statutory violations.

20       Plaintiff also brings a cross-motion for partial summary judgment solely as to this claim as

21   predicated on her March 2019 complaint.  (Doc. No. 74 at 39.)  She provides no evidence other

22   than what has already been discussed above and her argument in support of the cross-motion is

23   replete with broad, conclusory statements.  *See id.* at 39–40 (stating that "plaintiff was engaged in

24   protected activity" and "there is no question of material fact that Defendants (sic) retaliated

25   against" her).  Because the court finds triable issues of fact with regard to whether plaintiff's

26

27   [16]  While this may have been a legitimate, non-discriminatory reason, as discussed above, it is not
     a reason that proves that plaintiff's PAL would have been extended even if she had never filed her
28   March 2019 complaint.

1    March 2019 complaint contained reasonably based suspicions of illegal activity, whether

2    plaintiff's placement on and extension of PAL constituted an adverse employment action, and

3    whether her March 2019 complaint contributed to any adverse action, the court will likewise deny

4    plaintiff's motion seeking partial summary judgment in her favor on her whistleblower claim.

5                            ii.       August 2019 Disclosure

6          Plaintiff also predicates her whistleblower claim on her August 2019 written complaint

7    regarding the SHC's billing practices.  (Doc. No. 74 at 32.)  As evidence of a causal link between

8    this disclosure and an adverse employment action, she simply states that she was left on PAL

9    after filing the complaint.  (*Id*. at 34.)  Plaintiff provides no evidence that the two events are

10   connected; for example, evidence that defendant was planning to return her to work and changed

11   course when this complaint was filed.  Plaintiff also does not address the undisputed evidence that

12   at the time of her August 2019 complaint, defendant had not yet issued findings resolving other

13   open investigations.  Thus, plaintiff presents no evidence on summary judgment that any decision

14   to keep her on PAL was linked to her August 2019 complaint.  Consequently, plaintiff has not

15   carried her burden to demonstrate by a preponderance of the evidence that her August 2019

16   complaint was a contributing factor to an adverse employment action.

17                           iii.       December 2020 Disclosure

18         Lastly, plaintiff predicates her whistleblower claim on her December 2020 written

19   complaint alleging that her former coworker Vicki Salisbury had accessed patient records without

20   authority to do so.  Again, plaintiff's only evidence that this disclosure was a contributing factor

21   to an adverse employment action taken against her is the fact that "she was left on PAL for

22   another six months."  (Doc. No. 74 at 34.)  This conclusory statement is simply not supported by

23   the undisputed evidence, which instead shows that in March 2021 plaintiff was asked to return to

24   work, and in April 2021 she took medical leave.  Plaintiff has not directed the court to any

25   evidence before it, let alone a preponderance of evidence, that supports her contention that she

26   received a six-month extension of PAL due to her December 2020 disclosure.  Accordingly, the

27   court will grant summary judgment in favor of defendant as to plaintiff's whistleblower claim to

28   the extent that claim is predicated on plaintiff's December 2020 complaint.

9.      Plaintiff's OSHA Retaliation Claim (Claim Six)

Labor Code § 6310 prohibits an employer from terminating an employee because the employee has made "any oral or written complaint to . . . his or her employer" about unsafe working conditions or unsafe work practices (an OSHA complaint).  Cal. Lab. Code § 6310(a). "In contrast to claims under Labor Code section 1102.5, no parallel statute exists setting forth the respective parties' burdens for a whistleblower retaliation claim brought pursuant to section 6310, subdivision (b).  Accordingly, this claim is analyzed under the traditional *McDonnell Douglas* framework that applies generally to retaliation and whistleblower claims."  *Rodriguez v. Lab'y Corp. of Am.*, 623 F. Supp. 3d 1047, 1056 (C.D. Cal. 2022) (internal citation and quotations omitted).  The framework is as follows:

> [First], the plaintiff must show (1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.  If the employee successfully establishes these elements and thereby shows a *prima facie* case exists, the burden shifts to the employer to provide evidence that there was a legitimate, nonretaliatory reason for the adverse employment action.  If the employer produces evidence showing a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to provide "substantial responsive evidence" that the employer's proffered reasons were untrue or pretextual.

*Id.*  Plaintiff's activities are protected under § 6310 if she "complain[s] of unsafe working conditions or an unsafe workplace."  *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1223 (E.D. Cal. 2009).

Here, defendant argues that it is entitled to summary judgment on plaintiff's OSHA retaliation claim because plaintiff cannot establish a *prima facie* case because none of her alleged complaints involve unsafe working conditions or practices.  (Doc. No. 56-1 at 29.)  In the alternative, defendant argues that even if plaintiff has made out a *prima facie* case, defendant had legitimate business reasons for its challenged employment actions, and plaintiff has presented no evidence that such reasons were false or pretextual.  (*Id.* at 30.)

As to plaintiff's *prima facie* case, plaintiff argues that she made numerous complaints related to employee safety and health, including two complaints about the use of portable space

43

heaters at the SHC, and numerous complaints of ongoing harassment, unauthorized access by other employees into health records, and confidential medical information being left accessible to the public.  (Doc. No. 74 at 35.)  For the same reasons discussed above, the court will grant summary judgment in favor of defendant on plaintiff's OSHA retaliation claim to the extent that claim is predicated on plaintiff's complaints of ongoing harassment because plaintiff has provided no evidence on summary judgment of the content of these complaints.  The court will also grant summary judgment in defendant's favor as to plaintiff's OSHA retaliation claim to the extent that claim is predicated on plaintiff's complaints about access to patient records, since these disclosures do not involve employee safety in the workplace.  *See Creighton v. City of Livingston*, No. 08-cv-01507-OWW-SMS, 2009 WL 3246825, at *14 (E.D. Cal. Oct. 7, 2009) (finding that the plaintiff's allegation of "contaminated water pos[ing] a public health risk to the residents of the City of Livingston and users of its water supply . . . does not satisfy § 6310's requirement that the employee complain of unsafe working conditions or an unsafe workplace"); *see also Cenis v. Winco Holdings, Inc.*, 787 F. App'x 947 (9th Cir. 2019) (affirming the district court's order granting summary judgment on plaintiff's OSHA retaliation claim and finding that plaintiff's complaints did not concern workplace safety where they involved a risk to the public).  However, the court finds that there is a triable issue of fact as to whether plaintiff's complaints regarding the use of space heaters could constitute complaints regarding unsafe working conditions.

Once again, defendant has produced evidence of legitimate, nonretaliatory reasons for the only substantiated adverse employment action at issue—plaintiff's time on PAL.[17]  This shifts the burden back to plaintiff to come forward with "substantial responsive evidence" that defendant's

---

[17]  Plaintiff instructs the court to "see above" for which adverse employment actions she believes are relevant to plaintiff's sixth claim.  The court interprets this as an instruction from plaintiff that the court should refer back to the list of adverse actions and incidents she provided supporting her fifth claim, which includes her placement on PAL, being kept on PAL, not being permitted to attend trainings, being subjected to harassment, having negative comments made and solicited about her, Johnson instructing a coworker to videotape her, HR offering to return her to work on probationary status, and her constructive discharge.  The court has already addressed above each of these actions and determined that the granting of summary judgment in favor of defendant is appropriate with respect to the factual predicates that have not been supported by any evidence presented by plaintiff, leaving only plaintiff's placement and time spent on PAL as a cognizable factual predicate.

44

proffered reasons are untrue or pretextual.  Plaintiff seemingly attempts to shoulder this burden as to this claim by simply stating that defendant's reasoning for the adverse actions do not explain why defendant never addressed plaintiff's complaints about harassment or the safety risk posed by the use of portable space heaters.  (Doc. No. 74 at 38–39.)  This statement is irrelevant.  Defendant has produced evidence that plaintiff was placed on PAL and retained on PAL due to a need to conduct various investigations (unrelated to space heaters) and do so productively.  Plaintiff's argument that defendant did not investigate her complaints about space heaters is not evidence that defendant's reasons for keeping plaintiff on PAL were illegitimate.  Plaintiff thus falls far short of meeting the burden imposed under the *McDonnell Douglas* test as to her OSHA retaliation claim.

Accordingly, the court will also grant defendant's motion for summary judgment in its favor on plaintiff's OSHA retaliation claim.

### 10.    Plaintiff's First Amendment Claim (Claim Seven)

"It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'"  *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (alteration in original) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)); *see also Riley's American Heritage Farms v. Elsasser*, 32 F.4th 707, 720 (9th Cir. 2022).  This is so in part because the public often "has a strong interest in hearing from public employees, especially because '[g]overnment employees are often in the best position to know what ails the agencies for which they work.'"  *Dahlia*, 735 F.3d at 1066 (quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994)).

However, "[o]ut of recognition for 'the State's interest as an employer in regulating the speech of its employees," courts must "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012) (quoting *Connick v. Myers*, 461 U.S. 138, 140 (1983) and *Pickering*, 391 U.S. at 568); *see also Ohlson v.* /////

45

1   *Brady*, 9 F.4th 1156, 1162 (9th Cir. 2021).  Otherwise, "government offices could not function if

2   every employment decision became a constitutional matter."  *Connick*, 461 U.S. at 143.

3        "To establish a *prima facie* First Amendment retaliation claim, the plaintiff must prove

4   that (1) he engaged in protected speech; (2) the defendants took an adverse employment action

5   against him; and (3) his speech was a substantial or motivating factor for the adverse employment

6   action."  *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022).  Whether a

7   public employee has engaged in speech protected by the First Amendment breaks down to two

8   inquiries:  (1) whether he "spoke on a matter of public concern," and (2) whether he "spoke as a

9   private citizen or public employee."  *Id.* (quoting *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d

10  954, 961 (9th Cir. 2011)).[18]

11       Plaintiff bases her First Amendment claim on her "multiple complaints regarding the

12  portable space heaters," her "complaint of harassment, discrimination and retaliation," and her

13  "whistleblower complaint regarding the violation of the confidentiality of student/employee

14  medical records."  (Doc. No. 74 at 37–38.)  In its motion for summary judgment, defendant

15  argues that none of these issues regard matters of public concern.  (Doc. No. 56-1.)

16       While there is no precise definition of what constitutes a matter of public concern, "the

17  essential question is whether the speech addressed matters of 'public' as opposed to 'personal'

18  interest."  *Desrochers v. City of San Bernardino*, 572 F.3d 703, 710 (9th Cir. 2009).  To make

19  that determination, courts look to the "content, form, and context" of the speech.  *Connick*, 461

20  U.S. at 147; *see also Adams v. Cnty. of Sacramento*, ___F.4th___,  2024 WL 4113546, at *4 (9th

21  Cir. Sept. 9, 2024).  If the content relates to any matter of political, social, or other concern to the

---

22

23  [18]  If the plaintiff establishes a *prima facie* case, "the burdens of evidence and persuasion . . . shift
    to the defendants to show that the balance of interests justified their adverse employment

24  decision."  *Eng v. Cooley*, 552 F.3d 1062, 1074 (9th Cir. 2009).  As with plaintiff's § 1102.6
    claim, this framework is different from that of *McDonnell Douglas*.  *See Lawson v. PPG*

25  *Architectural Finishes, Inc.*, 12 Cal. 5th 703, 714 (2022) ("Other courts addressing burden-
    shifting frameworks similar to section 1102.6 have similarly found *McDonnell Douglas*

26  inapplicable.  For instance, nearly all courts to address the issue have concluded that *McDonnell*
    *Douglas* has no role to play in the adjudication of First Amendment retaliation claims . . . .").

27  Here, defendant does not argue that if the court finds that a *prima facie* case has been established,
    defendant has nonetheless carried the burden that would shift to it.

28

community, it weighs towards being constitutionally protected. *Gillette v. Delmore*, 886 F.2d 1194, 1197 (9th Cir. 1989).  On the other hand, "speech by public employees may be characterized as not of public concern when it is clear that such speech deals with individual personnel disputes and grievances that the information would be of no relevance to the public's evaluation of the performance of governmental agencies." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983).  "The same is true of speech that relates to internal power struggles within the workplace." *Desrochers*, 572 F.3d at 710 (internal citation and quotation omitted).

As to form, "[t]he public's interest in receiving the well-informed views of government employees engaging in civic discussion" is one of the primary purposes of its First Amendment retaliation jurisprudence. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).  Therefore, a "limited audience weigh[s] against [a] claim of protected speech." *Roe v. City & Cnty. of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997).  Thus, while an employee expressing her views privately rather than publicly is not dispositive of the issue, "private speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate." *Desrochers*, 572 F.3d at 714 (citation omitted).

Lastly, courts "examine the context of the speech, particularly the point of the speech." *Id.* at 715 (citation omitted).  "An employee's motivation [is] relevant to the public-concern inquiry." *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Desrochers*, 572 F.3d at 715).  "The question of whether the speech was made to further some purely private interest is relevant to that inquiry." *Desrochers*, 572 F.3d at 715 (citation and internal quotation marks omitted).  The Ninth Circuit has framed this inquiry with two questions: "[W]hy did the employee speak (as best as we can tell)?  Does the speech 'seek to bring to light actual or potential wrongdoing or breach of public trust,' or is it animated instead by 'dissatisfaction' with one's employment situation?" *Desrochers*, 572 F.3d at 715 (quoting *Connick*, 461 U.S. at 148); *see also Adams v. Cnty. of Sacramento*, 2024 WL 4113546, at *5.

a.    *Space Heater Complaints*

The court finds that here consideration of all three factors—content, form, and context—indicate that plaintiff's complaints about space heaters were not matters of public concern.  As to

47

1  the content, complaints about personal heaters are precisely the type of individual grievances that

2  would be of little to no relevance to the public.  *See Harris v. Harris*, No. 2:11-cv-02186-KJN,

3  2012 WL 5187764, at *9 (E.D. Cal. Oct. 17, 2012) (finding that the plaintiff's email did not

4  address a public concern where "the public [was] not likely to be truly interested in" his

5  grievance).  As to form and context, it is undisputed that plaintiff made complaints in 2016 and

6  2017 to Dr. Hennes, and in 2018 to Amy Diaz.  Plaintiff puts forward no evidence of any

7  disclosure to the public of these complaints, or disclosure in any context outside of her internal

8  grievances.  There is no evidence that her speech was intended to bring to light a breach of public

9  trust, rather than complain about a personal concern in the workplace.  Therefore, these factors

10  weigh against a finding of public concern as well.  *See Desrochers*, 572 F.3d at 715 ("Because the

11  speech at issue took the form of internal employee grievances which were not disseminated to the

12  public, this portion of the *Connick* test cuts against a finding of public concern."); *Harris*, 2012

13  WL 5187764, at *10 (finding that the context factor weighed in favor of unprotected speech

14  where the plaintiff did not allege that he engaged in speech in any context outside of internal

15  grievances).  Accordingly, the court will grant summary judgment in defendant's favor on

16  plaintiff's First Amendment claim to the extent it is predicated on plaintiff's complaints regarding

17  the use of portable space heaters in her workplace.

18             b.    *Complaint of Harassment, Discrimination, and Retaliation*

19        Plaintiff also claims that her complaint of harassment, discrimination, and retaliation

20  qualifies as a matter of public concern.  (Doc. No. 74 at 38.)  In opposing defendant's motion for

21  summary judgment as to this claim, plaintiff does not direct the court to any evidence of or details

22  regarding this complaint.  It appears to the court that plaintiff is referring to her July 2018

23  meeting with Dr. Hennes, Temple, and two union representatives.  In plaintiff's statement of

24  undisputed facts, she directs the court to her deposition, her declaration, and union representative

25  McCulley's declaration as evidence that she complained during this meeting that she was being

26  harassed due to her gender, disability, and age.  (Doc. No. 74-3 at ¶ 8.)  However, as discussed

27  /////

28  /////

1  above, there is no evidence before the court on summary judgment regarding the content of her

2  complaint, and the documents referenced by plaintiff in her opposition are entirely unhelpful.[19]

3        Given the complete lack of evidence submitted to the court on summary judgment

4  regarding the content of plaintiff's complaint of harassment, discrimination, and retaliation, the

5  court concludes that she has not satisfied the first prong of establishing a *prima facie* case:  that

6  she engaged in protected speech.  *See Greisen v. Hanken*, 925 F.3d 1097, 1110 (9th Cir. 2019)

7  ("[A] court must have sufficient information about the content, form and context of speech to

8  determine whether it was on a matter of public concern.").  Accordingly, the court will also grant

9  summary judgment in favor of defendant on plaintiff's First Amendment claim to the extent it is

10  predicated on her complaint of harassment, discrimination, and retaliation.

11          c.    *Complaint regarding Confidentiality of Medical Records*

12        Finally, plaintiff predicates her First Amendment claim on her "filing a whistleblower

13  complaint regarding the violation of the confidentiality of student/employee medical records."

14  (Doc. No. 74 at 37.)  Plaintiff does not specify which written complaint of that nature she is

15  referring to, but the court presumes that it is her March 2019 complaint which reported on Gomez

16  and four other employees.

17          i.    Protected Speech

18        As stated previously, determining whether a public employee has engaged in speech

19  protected by the First Amendment requires two inquiries:  (1) whether plaintiff "spoke on a

20

21      [19]  For example, plaintiff directs the court to her deposition at 168:19–170:16 as evidence that she

22  complained about harassment at this July 2018 meeting.  But these pages of plaintiff's deposition were not submitted to the court.  Thereafter, the court's courtroom deputy directed the parties to provide the deposition transcripts in full, as required by Local Rule 133(j).  After receiving the

23  full transcript, the court determined that the cited pages of plaintiff's deposition concerned an entirely different meeting in December 2018 and reflected no evidence of plaintiff making any

24  complaints.  Furthermore, the two declarations that plaintiff purports are evidence of her July 2018 complaint are vague as to what the content of her complaint was in that instance.  *See* Doc.

25  No. 74-2 at ¶ 6 ("One of the purposes of the meeting was to inform HR and her (sic) supervisor about harassment that I was suffering at the hands of her (sic) coworkers.  I stated that I was

26  being harassed and a hostile work environment created due to my gender, disability and age.");

27  Doc. No. 74-3 at ¶ 3 ("One of the purposes of the meeting was to inform HR and her supervisor about harassment that Ms. Rounds was suffering at the hands of her coworkers.  Ms. Rounds

28  stated that she was being harassed and that she was the victim of a hostile work environment.").

matter of public concern," and (2) whether she "spoke as a private citizen or public employee." *Johnson*, 658 F.3d at 961.  In its motion for summary judgment, defendant argues that plaintiff's complaint about her coworkers accessing records without authorization fails the first prong, because this complaint was merely an internal dispute that does not involve matters of public concern.[20]

It is clear that the vast majority of plaintiff's March 2019 complaint does not touch on a matter of public concern.  For example, plaintiff complained that vacation time was entered on her timecard for a day that she was at work. (Doc. No. 74-2 at 72.)  Plaintiff also complained that Dr. Hennes forbid her from doing certain tasks, such as making travel arrangements and submitting travel expense reports.  (*Id*. at 71.)  However, the complaint also reflected plaintiff's concerns about practices at the SHC regarding the privacy of patient health information.  Plaintiff reported that certain staff members had been accessing sensitive records without a business need, and that her suggestions regarding the conducting of audits or the creating of processes to prevent unauthorized access to medical records and other HIPAA violations had been ignored.  (*Id*. at 69–70.)  "The privacy of educational and health records is clearly a matter of public concern, as is evidenced by the existence of national privacy statutes like HIPAA and FERPA." *Zimmerman v. Univ. of Utah*, No. 2:13-cv-01131-JNP-BCW, 2016 WL 3647857, at *9 (D. Utah July 1, 2016).  Accordingly, the court finds that the content of plaintiff's complaint weighs in favor of finding that it contained, at least in part, matters of public concern.  *See Barnum v. Ohio State Univ. Med. Ctr*., 642 F. App'x 525, 530 (6th Cir. 2016) (affirming the district court's finding that the defendant's "practices relating to individually identifiable health information, particularly practices that are alleged to violate HIPAA, are a matter of public concern"); *Grundfor v. Bouffard*, No. 16-cv-04163-BRO-AGR, 2017 WL 10541445, at *6 (C.D. Cal. Aug. 7, 2017)

---

[20]  The court notes that in its reply brief, defendant argues for the first time that under the second prong plaintiff's speech was also not protected because it was made pursuant to her role as an IT security compliance officer, meaning she spoke as an employee and not as a private citizen. (Doc. No. 79 at 17.)  Because this argument was not raised in defendant's motion, it will be disregarded. *See Zimmerman v. Univ. of Utah*, No. 2:13-cv-1131-JNP-BCW, 2016 WL 3647857, at *9 (D. Utah July 1, 2016) (disregarding the defendant's argument that the plaintiff's speech was made in her official capacity because it was not raised before the reply memorandum).

1  (finding that "the allegedly protected speech pertaining to hospital staff's treatment of patients,

2  management, and safety at ASH is a matter of public concern").

3      As to the context of the speech, the court will consider plaintiff's motivation, particularly

4  whether her speech sought "to bring to light actual or potential wrongdoing or breach of public

5  trust" or was instead animated by dissatisfaction with her employment situation, was made to

6  further a purely private interest, or was made in the context of a workplace power struggle.

7  *Desrochers*, 572 F.3d at 715.  "If the communication is essentially self-interested, with no public

8  import, then it is not of public concern."  *Roe*, 109 F.3d at 585.  However, just because plaintiff

9  has a "highly personal motive for disclosure does not necessarily mean that the speech is not a

10  matter of public concern."  *Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010); *see also*

11  *Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021); *Zorzi v. Cnty. of Putnam*, 30 F.3d 885,

12  897 (7th Cir. 1994).

13      Here, plaintiff's complaint contains several details about workplace power struggles, such

14  as Diaz taking Gomez's suggestions over plaintiff's, and Dr. Hennes ignoring many of plaintiff's

15  requests.  (Doc. No. 74-2 at 66–68.)  The complaint also discusses the impact on her own work

16  experience and the personal liability plaintiff feared she could face in connection with purported

17  HIPAA violations at the SHC.  (*Id.* at 64.)  The court finds that the context of plaintiff's

18  complaint reflected a personal motive on her part and thus weighs against a finding of public

19  speech, but this is not entirely dispositive.  *See Zimmerman*, 2016 WL 3647857, at *9 (concluding

20  that the defendants were not entitled to summary judgment on the plaintiff's First Amendment

21  claim even where the plaintiff's expressed concerns were both personal in nature as to her own

22  liability regarding faculty members' failure to follow applicable data security and privacy

23  agreements but also related to issues of public concern).

24      As to the form of the complaint, plaintiff sent her written complaint to the California State

25  Auditor and CSU Chancellor's Office, presumably for purposes of instigating further

26  investigation.  While this is still a limited, non-public audience, as compared to taking her

27  complaint to the media, it does exceed the bounds of internal workplace reporting structures.

28  Accordingly, this factor weighs slightly in favor of finding that plaintiff's complaint contained

1   protected speech.  *See Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006) (concluding that the

2   correctional officer's communications with a state senator and the California inspector general

3   were protected speech, but her internal reports were not).

4        Having considered the content, context, and form of plaintiff's March 2019 complaint, the

5   court finds that it at least in small part speaks on a matter of public concern.  As a result, plaintiff

6   has satisfied this first element of her *prima facie* case.

7                        ii.    Causal Relationship

8        Defendant also argues that plaintiff's claim fails as to the third element of the *prima facie*

9   case:  whether her complaint was a substantial or motivating factor for any adverse employment

10  action.[21]  "Circumstantial evidence can create a genuine issue of material fact on the question of

11  retaliatory motive when the plaintiff provides evidence that [her] employer knew of [her] speech"

12  and evidence "showing a proximity in time between the protected action and the allegedly

13  retaliatory employment decision."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1045 (9th Cir.

14  2017) (citing *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 751–52 (9th Cir.

15  2001)); *see also Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022).  As discussed above with

16  respect to plaintiff's fifth claim for whistleblower retaliation, the court has found that plaintiff has

17  provided evidence that her employer knew about her March 2019 complaint almost immediately

18  after she submitted it.  Plaintiff has also presented evidence on summary judgment that soon after

19  she filed that complaint, defendant changed course on its plans to bring her back to the workforce

20  and instead decided to extend her time on PAL.  Accordingly, while there is conflicting evidence

21  about the reasons for the length of time plaintiff spent on PAL, the court concludes that plaintiff

22  has identified a triable issue of fact with regard to defendant's motivation for keeping her on

23

24  ————————————

    [21]  As to this claim, plaintiff argues that the relevant "retaliatory actions" are her being taken out

25  of the workforce, her placement on PAL for two and a half years, the restriction of her access to
    campus and inability to speak with others while on PAL, and the demand that she return on

26  probationary status.  (Doc. No. 72 at 38.)  The court has already concluded that the granting of
    summary judgment in favor of defendant with regard to the purported adverse action of

27  probationary status is appropriate.  The court will consider plaintiff's placement and the length of
    time spent on PAL, which encapsulates the other "retaliatory actions" she has identified, as the

28  relevant adverse employment action with respect to this claim.

PAL.  Accordingly, the court will deny defendant's motion for summary judgment in its favor on plaintiff's First Amendment claim to the extent that claim is predicated on plaintiff's March 2019 complaint.

## CONCLUSION

For the reasons explained above,

1.    Plaintiff's request for judicial notice (Doc. No. 74-7) is granted in part and denied in part as indicated in this order;

2.    Defendant's motion for summary judgment (Doc. No. 56) is granted in part and denied in part;

       a.    Defendant's motion for summary judgment in its favor on plaintiff's FEHA gender, race, and disability discrimination/retaliation claims, harassment claim, and OSHA retaliation claim is granted in full;

       b.    Defendant's motion for summary judgment in its favor on plaintiff's whistleblower retaliation and First Amendment retaliation claims is granted in part and denied in part, as explained in this order;

3.    Plaintiff's motion for partial summary judgment (Doc. No. 74) is denied;

4.    This case proceeds only on plaintiff's whistleblower retaliation and First Amendment retaliation claims as predicated on her March 2019 complaint and her placement and retention on paid administrative leave;

5.    The parties are directed to meet and confer on their availability for trial, and within fourteen (14) days of the entry of this order, to contact Courtroom Deputy Pete Buzo at (916) 930-4016 or pbuzo@caed.uscourts.gov with their multiple proposed dates for a Final Pretrial Conference and Jury Trial in this action.  Upon receipt of the parties' proposals the court will issue an order rescheduling those dates.

IT IS SO ORDERED.

Dated:   __September 26, 2024__                    _____

                                          DALE A. DROZD
                                          UNITED STATES DISTRICT JUDGE